UNITED STATES v. AMERICAN LUMBER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1898.)

No. 378.

1. LIMITATION OF ACTIONS—RUNNING OF STATUTE—COMMENCEMENT OF ACTION.
   A suit in equity in a federal court is commenced by the suing out of the appropriate process and a bona fide attempt to serve it. Bona fides requires an effort to proceed according to law, and to employ the means which the law prescribes.

2. SAME—SERVICE OF SUBPŒNA BEYOND JURISDICTION.
   The issuance of a subpœna to be served outside the territorial jurisdiction of a federal court, and the service thereof, is a mere nullity, and not a commencement of the suit, which will stop the running of limitation. 80 Fed. 309, affirmed.

3. SAME—SUITS BY UNITED STATES.
   Under the act of March 3, 1891, providing that suits by the United States to annul patents theretofore issued shall only be brought within five years from the date of the act, the same rules are to be applied in determining when a suit is commenced as in suits between private parties.

Appeal from the Circuit Court of the United States for the Northern District of California.

Benjamin F. Bergen, H. S. Foote, and Samuel Knight, for the United States.

Page, McCutcheon & Eells, Swift, Campbell & Jones, Platt & Bayne, and Butler, Notman, Joline & Mynderse, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The United States brought a suit in equity against the American Lumber Company and the Central Trust Company to declare null and void certain patents issued by the United States for lands in California, the title to which is vested in the American Lumber Company, subject to the lien of a trust deed to the Central Trust Company, securing bonds of the former company to the amount of $300,000. The defendants pleaded in bar of the suit that by an act of congress approved March 3, 1891 (26 Stat. 1093, § 8), it is pro-

vided that "suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act," and that the patents which it was the object of the suit to annul and vacate had been issued before the enactment of said statute, and that the suit had not been brought within five years from the passage of the act. The bill was filed on February 3, 1896, in the circuit court for the Northern district of California. It contained the allegation that the defendant the American Lumber Company is a corporation organized under the laws of the state of Illinois, and that the Central Trust Company is a corporation organized under the laws of the state of New York. On the day on which the bill was filed, two subpœnas bearing date February 3, 1896, were issued out of the clerk's office, upon a præcipe which reads as follows:

"To the Clerk of Said Court—Sir: Please issue two originals and two copies of subpœna ad respondendum herein, for service upon respondents, returnable March 2, 1896; one original and copy being necessary for service upon, and for marshal to make return of service upon, the respondent American Lumber Co., in Chicago, and the other original and copy of subpœna ad respondendum being necessary for marshal to serve upon, and to make return of service upon, the respondent Central Trust Co., in New York."

Both of the subpœnas so issued were sent as soon as issued, the one to the United States marshal for the Northern district of Illinois, and the other to the United States marshal for the Southern district of New York. The marshal for the Northern district of Illinois returned the subpœna with the indorsement that the defendants were not found within his district. A subpœna was again issued February 18, 1896, and was sent to said marshal, and was thereafter returned with the indorsement that on February 24, 1896, it had been served upon the secretary of the American Lumber Company, in that district. The marshal for the Southern district of New York served the subpœna on the Central Trust Company, in New York, on February 11, 1896. On March 5, 1896, and two days after the expiration of the five-years period of limitation for the commencement of the suit, an order was entered in the suit, reciting that it appeared from the affidavit of Benjamin F. Bergen, solicitor for the complainant, that the defendants were foreign corporations, having no officer or representative or agent, nor any office or place of business, within the state of California, and that the defendants could not be found in said state, and had not voluntarily appeared in the suit, and requiring them to appear on April 6, 1896. A copy of this order was served on the American Lumber Company March 9, 1896, and on the Central Trust Company March 16, 1896. On June 22, 1896, the service of this order was quashed upon the motion of the defendants; and on June 25, 1896, another order was thereupon entered, containing recitals similar to those of the first order, and directing the defendants to appear on August 3, 1896. It was upon the service of this last order that the defendants appeared and filed the pleas of the statute of limitations above set forth. Upon the hearing before the circuit court, the pleas were sustained, and the bill was dismissed. The case upon appeal to this court presents the single question whether or not, upon the record above set forth, the suit was begun within five years after March 3, 1891.

Was the suit begun on or before March 3, 1896?    It is contended by the appellant that by filing the bill in equity and causing process to be issued thereon, for both the defendants, in good faith, before that date, it took all the steps necessary to bring or commence the suit before the expiration of the time limited by the act of congress.    Just at what point of time a suit in equity may be said to have been begun under the practice of the federal courts has not been determined by any statute, or by any rule of court, or by any authoritative decision. A solution of the question must be found by reference to the English chancery practice, which has been made the rule of procedure in those courts.

The origin of the English chancery practice is involved in some obscurity, but from the earliest treatises upon the subject it appears that the jurisdiction of the court of chancery was invoked formerly, as now, by filing a petition or bill setting forth the complainant's grounds for relief, and praying that a writ of subpœna issue.    Upon the petition so presented, the chancellor determined whether a cause was made for the issuance of the writ.    He had the power to grant or to withhold the writ.    If the writ was granted, the suit was begun; otherwise, there was no suit.    The issuance of the writ was the commencement of the suit.    In Harg. Law Tracts, 321, 425, may be found treatises on the writ of subpœna, in which the suit in chancery is designated a suit by subpœna.    In course of time the practice was modified so that the signature of counsel for the complainant was taken as sufficient authority for the issuance of the writ, and it was no longer necessary for the chancellor to pass upon the case made in the petition.    It was held that the suit was pending from the teste of the subpœna.    Pigott v. Nower, 3 Swanst. 534.    Such, in brief, was the English chancery practice at the time of its adoption as the rule of procedure in the courts of the United States.    And while it is true that, in cases where the suit was instituted on behalf of the crown, the matter of complaint was presented to the court by way of information instead of by petition or bill, it was only in form that the information differed from a bill; and it appears that from the filing of the information the subsequent procedure was substantially the same as in other suits.    Mitf. Ch. Pl. 7, 22, 119; Attorney General v. Vernon, 1 Vern. 277, 370.    The present suit on behalf of the United States might, no doubt, have followed the procedure of the English courts upon information (1 Barb. Ch. Prac. 34); but no warrant would be found from that fact for departing from the ordinary course of a suit in equity.    Our equity rule No. 7 follows the English statute (4 Anne, c. 16, § 22) in providing that "no process of subpœna shall issue from the clerk's office in any suit in equity until the bill is filed in the office."    Rule 5 provides that while all motions for the issuance of mesne process in the clerk's office shall be grantable, of course, by the clerk of the court, "the same may be suspended or altered or rescinded by any judge of the court upon special cause shown."    In the frame of the bill there is still inserted the prayer that the writ of subpœna may issue; but, under equity rule 24, signature of counsel is "an affirmation, upon his part that, upon the instructions given to him and the case laid before him, there is good ground for the suit in the manner in which it is

framed"; and it takes the place of an examination of the bill by the chancellor under the original practice. The writ of subpœna in the English chancery practice ran in the name of the king, and was returnable before the chancellor. Our writ is issued in the name of the president of the United States, and is returnable before the court in chancery. It has been the interpretation of the English chancery practice, as the same has been followed and applied by the American state courts, that a suit is begun, within the meaning of the statute of limitations, when the subpœna has been issued, provided that its issuance has been followed by a bona fide effort to serve the same.

In the case of Hayden v. Bucklin, 9 Paige, 512, Chancellor Walworth thus stated the law:

"At the present day the filing of a bill, and taking out a subpœna thereon, and making a bona fide attempt to serve it without delay, may be considered as the commencement of the suit for the purpose of preventing the operation of the statute of limitations, if the suit is afterwards prosecuted with due and reasonable diligence."

The language of the opinion so quoted is adopted as an authoritative formulation of the law in Busw. Lim. § 365, and in Ang. Lim. § 330.

In Fitch v. Smith, 10 Paige, 9, the chancellor again declared the rule:

"It is true, in common parlance we use the expression 'filing of the bill' to denote the commencement of a suit in chancery, instead of referring to the issuing and service of subpœna, or the making of a bona fide attempt to serve it after the bill has been filed, which is the actual commencement of the suit in this court."

In Pindell v. Maydwell, 7 B. Mon. 314, the supreme court of Kentucky said:

"In bringing a suit in chancery, the first step taken by the complainant is to file his petition or bill; and hence writers on this subject frequently speak in general terms of this act as the commencement of the suit. But, so far as it relates to the defendant, the suing out process against him is the commencement of the suit, preferring the bill being only preparatory to this being done."

Counsel for the appellant rely upon the language of the court so quoted, and upon similar expressions of other courts, to sustain the doctrine that suing out process is beginning the suit, and contend that the present suit was begun on February 3, 1896, for the reason that process was sued out upon that date. They argue that it does not follow from the fact that the defendants were nonresidents of the state of California, and were corporations created under the laws of other states, that they might not have been found within the Northern district of California for the purpose of service of the writ, and that there is nothing in the bill to indicate that the defendants had not agents or officers within the district upon whom such service might have been had. In short, they contend that process was sued out in good faith, and that, therefore, the suit was begun.

This leads us to inquire what is meant by the term "suing out process." From the authorities it appears that suing out process in equity is the same in meaning as suing out process in an action at law. It means that, upon the filing of a bill, a writ of subpœna is filled out by the clerk, and is delivered for service. Blain v. Blain, 45 Vt. 538; Day v. Lamb, 7 Vt. 426; Mason v. Cheney, 47 N. H. 24; Hardy v. Corlis, 21 N. H. 356; Updike v. Ten Broeck, 32 N. J. Law, 105; Bur-

dick v. Green, 18 Johns. 14; Jackson v. Brooks, 14 Wend. 650; Haughton v. Leary, 3 N. C. 21; Webster v. Sharpe (N. C.) 21 S. E. 912; Hail v. Spencer, 1 R. I. 17; Gardner v. Webber, 17 Pick. 407; Evans v. Galloway, 20 Ind. 479; Whitaker v. Turnbull, 18 N. J. Law, 172. In order that the writ be deemed to be sued out, it must have left the possession of the officer who issued it, and must either have reached the possession of the officer who is to serve it, or the possession of some one who is the medium of transmission to such officer. But this is not sufficient to toll the statute of limitations. The delivery of the writ must be followed either by a service of the same or by a bona fide effort to serve it. If nothing be done with the writ after its issuance, if it be returned unserved, or without the bona fide effort to serve it, and a new writ be taken out, the date of the commencement of the suit will be postponed to the date of the second writ. Equity rule 7 prescribes that "the process of subpœna shall constitute the proper mesne process in all suits in equity, in the first instance, to require the defendant to appear and answer the exigency of the bill." There can be no doubt, in view of the averments of the bill, that if the subpœna in this case had been delivered upon its issuance to the marshal for the Northern district of California, for service upon the defendants in case they could be found in that district, and a bona fide effort had been made to serve them therein, and that effort had been followed by timely proceedings to acquire jurisdiction by substituted service, the commencement of the suit would relate back to the date when the writ was so issued. So, also, it would seem that if, under the bill in this case, without the issuance of a subpœna, proceedings had been had according to the act of March 3, 1875, to obtain the special order therein provided for, the suit would have been begun at the moment when the special order was issued and delivered for service. Forsyth v. Pierson, 9 Fed. 801; Batt v. Proctor, 45 Fed. 515. But see, contra, Bronson v. Keokuk, 2 Dill. 498, Fed. Cas. No. 1,928. But, whether we measure the effort to make service in this case by what was actually done or by the intention, the steps that were taken come short of the requirement of the rule. The only information we have concerning the intention of complainant or its counsel in suing out the writ is afforded—First, by the præcipe, and, second, by what was done with the writ. From the præcipe it appears that the intention was to send the subpœnas forthwith without the state for service. From the writs themselves it appears that they never came into the hands of the officer who was authorized to serve them, the marshal of the Northern district of California, but that they were sent to persons who were without authority to serve the same, and were by them subsequently returned to the clerk's office. It is needless to say that the process of the court could not run beyond the court's territorial jurisdiction. In deciding whether there was an effort to serve the subpœnas in good faith, we must be guided by a consideration of what the law required in order to effect a valid service. It does not aid the bona fides of the attempt to serve that the appellant's counsel thought that the subpœnas could be legally served by the persons to whom they were sent. It is immaterial what may have been his belief or his opinion in that regard. The bona fides must be shown by proof that an effort was made to

proceed according to law, and that use was made, or attempted to be made, of the means which the law prescribes. After the writs were issued in this case, not a step was taken in the line of lawful procedure. Sending the writs without the district in which only they could be served, and to persons who were without power to serve them, were vain and futile acts. The delivery of copies of the subpœnas to the defendants at their offices in Illinois and New York, while it was sufficient to give them actual notice that a bill had been filed against them, was neither a service nor an attempted service upon them, and was of no greater effect than any other notice which they might have received of the same fact. In short, it may be said that up to the 5th day of March, 1896, nothing had been done to begin the suit except to file the bill, and to cause subpœnas to issue, which subpœnas were subsequently returned to the clerk's office.

It is argued that the court should construe liberally, in favor of the United States, a self-imposed statute of limitations, and the case of U. S. v. American Bell Tel. Co., 159 U. S. 548, 16 Sup. Ct. 69, is cited. The doctrine of that case, and of the precedents on which it is sustained, is confined in its application to cases in which uncertainty exists as to the intention of the legislature to impose the limitation. In the present case no doubt is suggested by the language of the statute, and there is no room for construction. It is clear that congress has said that all suits by the United States to vacate patents shall be brought within the period limited by the act. The only question we are called upon to decide is whether this suit has been begun within that period. In determining at what point in the proceedings a suit shall be deemed to be commenced, we have no warrant for holding that the rule applicable to a suit on behalf of the United States shall differ from that applicable to other cases. When the United States, through its congress, has said that suits in its favor shall be brought only within a stated period, we have no criterion for determining whether a given suit was commenced within that period, except to apply the rules and principles applicable to all suitors. The decree of the circuit court will be affirmed.