UNITED STATES, to Use of PITTSBURG PLANING MILL CO. et al. v. SCHEURMAN et al.

(District Court, D. Idaho, Central Division. November 9, 1914.)

1. UNITED STATES (§ 67*)—CONTRACTORS' BONDS—ACTIONS—STATUTORY PROVISIONS.

Under Act Feb. 24, 1905, c. 778, 33 Stat. 811 (Comp. St. 1913, § 6923), providing that, if no suit be brought by the United States on the bond of a contractor for the construction of public works within six months from the completion and final settlement of the contract, laborers and materialmen may bring suit thereon in the name of the United States, provided that such suit shall be commenced within one year after the performance and final settlement of the contract, that only one action shall be brought, and any creditor may file his claim therein and be made a party thereto within one year from the completion of the contract, and that personal notice of the pendency thereof shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation for at least three successive weeks, the last publication to be at least three months before the time limited therefor, the limitation of time prescribed for bringing the suit conditions the right to sue and does not merely bar the remedy.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

2. UNITED STATES (§ 67*)—CONTRACTORS' BONDS—ACTIONS—STATUTORY PROVISIONS.

That an action on a contractor's bond under Act Feb. 24, 1905, was not commenced a sufficient length of time before the expiration of one year from the completion of the contract to permit of the prescribed publication of notice to other creditors did not defeat the action, as the provision for such publication is for the benefit of other creditors, and in no way for the benefit of the surety, the contractor, or the United States.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

3. UNITED STATES (§ 67*)—CONTRACTORS' BONDS—ACTIONS—STATUTORY PROVISIONS—"COMMENCED."

Where, in an action on a contractor's bond against the contractor and its surety, an amended complaint was filed substituting for the surety a defendant alleged to have succeeded to the surety's business and assumed its liabilities, the action was not "commenced" against such defendant, within Act Feb. 24, 1905, requiring such actions to be commenced within one year after the completion of the contract, until the filing of the amended complaint.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, First and Second Series, Commencement of Action.]

4. UNITED STATES (§ 67*)—CONTRACTORS' BONDS—ACTIONS—STATUTORY PROVISIONS—"COMMENCED."

In an action on the bond of a contractor with the United States who completed his contract on July 3, 1912, a complaint was filed against the contractor and its surety on June 21, 1913. Process was not issued until September 23, 1913, at which time a subpœna was placed in the hands of an officer and returned unserved because none of the defendants could be found in the district. On July 31, 1914, summons was issued and served upon a defendant which had been substituted for the original surety. Held that, if the suit was in equity, it was not "commenced" within one year after the completion of the contract, as required by Act

Feb. 24, 1905, since a suit in equity is not commenced until the issuance of a subpœna followed by a bona fide effort to serve it.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

5. PROCESS (§ 21*)—TIME FOR SERVICE—STATUTORY PROVISIONS—"COMMENCED." If such action were at law, and hence "commenced" when the complaint was filed, it could not be maintained because the summons was not issued within one year after the filing of the complaint, as required by Rev. Codes Idaho, § 4139.

[Ed. Note.—For other cases, see Process, Cent. Dig. § 16; Dec. Dig. § 21.*]

Action in the name of the United States, to the use of the Pittsburg Planing Mill Company and other creditors of the Interstate Construction Company, Limited, against Ernest W. Scheurman and others, copartners doing business as the Interstate Construction Company, Limited, and another. On demurrer to the complaint. Overruled as to the construction company, and sustained as to the defendant Maryland Casualty Company.

F. B. Wheeler, of Pittsburg, Kan., and Geo. G. Pickett, of Moscow, Idaho, for plaintiffs.

Forney & Moore, of Moscow, Idaho, for defendants.

DIETRICH, District Judge.   [1] The plaintiff brings this suit under the provisions of an act of February 24, 1905, c. 778, 33 Stat. 811 (Comp. St. 1913, § 6923), conferring upon persons who have furnished labor or material for the construction of public works the right, under certain conditions, to claim the protection of the bond given to the government by the contractor for the faithful performance of his contract.

The contract presently involved, which was for the construction of the post office building at Moscow, Idaho, was completed, and final settlement thereof made, on July 3, 1912. The complaint herein was filed June 21, 1913. Originally the Interstate Construction Company, which was the contractor, and the Bankers' Security Company, its surety, were named as defendants; but in an amended complaint filed June 10, 1914, the Maryland Casualty Company was joined as defendant, with the explanation that after the execution of the bond in question the casualty company had, by a written agreement, and for a valuable consideration, succeeded to the business of the security company, and had assumed all the liabilities of the latter, including the obligations of this bond.

Among other provisions, the act of 1905, supra, contains the following:

"If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall * * * be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

elsewhere, for his or their use and benefit, against said contractor, and his sureties, and to prosecute the same to final judgment and execution: Provided, that where such suit is instituted by any of such creditors on the bond of the contractor it shall * * * be commenced within one year after the performance and final settlement of said contract, and not later: And provided further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later. * * * Provided further, that in all suits instituted under the provisions of this act such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the state or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

[2] The limitation of time thus prescribed for bringing suit conditions the right to sue, and does not merely bar the remedy. Baker Contract Co. v. United States, 204 Fed. 390, 122 C. C. A. 560. Invoking this principle, the casualty company, by general demurrer, raises the objection that the complaint fails to exhibit an existing cause of action. In the first place, conceding that the suit was originally instituted within a year from the time the final settlement was made, it urges that it was too late, for the reason that the statute provides that, after action is commenced, notice by publication for at least three weeks must be given of the pendency thereof, the publication to be complete at least three months prior to the expiration of the year, and that compliance with this provision was no longer possible when the suit was commenced. Reliance is placed upon United States v. Stannard (D. C.) 206 Fed. 326, which it is to be admitted apparently supports the proposition. Under this view, while the act in express terms provides that the suit may be brought within a year, it must in reality be instituted in approximately eight months, and, inasmuch as it cannot be brought within the first six months of this period, the creditor has in fact only a little more than two months in which to commence it. While doubtless such a construction is possible, it not only harshly restricts the remedy which it was the purpose of the statute to afford, but it is in the face of language the meaning of which, if standing alone, could not be mistaken, and therefore it should not be adopted except for reasons of the most cogent character.

For the necessities of this case it will suffice to inquire for whose benefit and for what object this proviso was inserted. Clearly it was not for the protection of the government, for suits of this character cannot be instituted until it has been fully indemnified or has waived its right by failure to sue. It was not for the benefit of the contractor, for he is, of course, liable, regardless of the statute. Nor was it for the protection of the surety, for in no contingency can it be benefited by the giving of the notice, or prejudiced by withholding it. If the failure to publish the notice could under any circumstances operate to extend the time for the assertion of claims, or serve as the basis or the occasion for additional suits, or in any other way increase the burdens or perils of the surety, it would doubtless have the right to insist upon full compliance with the provision. But such is not the

case. Whether the notice is or is not given, only one suit is authorized, and no claims can be put in suit by intervention or otherwise after the expiration of one year from the date the contract was completed. In this respect, therefore, it must be noted that there is a clear distinction between this proviso and the clauses limiting to one year the time in which suit may be commenced or interventions had. Whatever may be its scope or its precise meaning, the former, as it clearly purports to be, is solely for the benefit of other claimants; while the latter, as they purport to be, are for the protection of the surety. The latter present conditions precedent to the right to put claims in suit, while clearly such is not the effect of the former, for its requirements cannot be complied with until after suit is commenced. We need not now determine upon whom falls the burden of giving the notice; certain it is that the statute does not in terms impose the duty upon the plaintiff. Nor need we decide under what conditions it should be given, or what it should contain. It is difficult to see of what utility it could be in a case like this. If the plaintiff were pressing its suit to judgment and execution before the expiration of the year, then the purpose of such a notice would be clear enough. By being advised of the pendency of the action, other claimants could intervene before the plaintiff secured any advantage, and thus share pro rata in any judgment that may be obtained. But if the plaintiff waits until the expiration of a year, other claimants can suffer no prejudice. They are in no need of the notice to advise them of their rights or of the conditions upon which they can enforce them. This information they already have from the statute, which definitely advises them in what tribunal and within what time and in what manner they must assert their claims. The notice can add nothing to the knowledge they already have, except the unimportant fact that a suit has been commenced, which they can learn upon the simplest inquiry at the place pointed out by the statute. It would therefore seem to be useless to give the notice, except in cases where the plaintiff desires to proceed to judgment before the expiration of the year. But if the other view be taken, and if it be conceded that notice must be given in all cases in so far as possible, and that the burden rests upon the plaintiff, the surety, being without interest, cannot profit by any default in that respect. As intimated in the Baker Contract Co. Case, that is a matter entirely between the plaintiff and other claimants who may suffer loss by reason of the neglect. The surety has, by its bond, undertaken that its principal will pay all claims for labor and material not to exceed the penalty of the bond, after the government's demands are satisfied. About this obligation the statute has thrown two safeguards, and only two: All claims must be presented within a year, and all must be waged in a single suit in a designated tribunal. By the failure to give the notice in this case the surety has been in no wise prejudiced in the full enjoyment of these guaranties. The plaintiff has put its claim in suit in the proper tribunal and within the prescribed time. The only possible effect of notice would be to augment, and not to diminish, the surety's burdens, and to yield to its contention would be to hold that a party may assign as error an omission or mistake of which it is the beneficiary.

[3] In the next place, it is urged that the suit was not "commenced" within a year from the time the contract was completed and settlement made. It is not denied that the original complaint was seasonably filed, but attention is drawn to the fact that the casualty company was not a party thereto, and was first brought into the suit by the filing of the amended complaint, more than eleven months after the expiration of the year. It is a familiar principle that a suit is not deemed to be commenced against a party brought in by amendment until such amendment is made; the amendment does not relate back to the filing of the original pleading. True, the cause of action stated against the casualty company arises, not directly out of the original undertaking, but out of the contract between it and the security company, and that contract is in itself not subject to the limitations of the act under consideration. But nevertheless liability must first be established upon the undertaking before responsibility attaches under the subsequent contract. What aspect this question might have had if the casualty company had been brought in as an additional party defendant, we need not discuss, for here it was not added but substituted, and therefore in effect by the filing of the amended complaint the suit was dismissed as to the security company.

[4, 5] But if we were to adopt the theory that the substitution was not in effect the commencement of a new action upon the bond, but only a continuation of the existing one, what is the situation? While, as already observed, the original complaint was filed on June 21, 1913, twelve days before the expiration of the year, no process was issued until September 23, 1913, more than two months and a half after the expiration of the year, at which time a subpœna ad respondendum was placed in the hands of the marshal, and by him indorsed with a return, of that date, to the effect that none of the defendants could be found in the district. No other process was issued until after the filing of the amended complaint, whereupon, of date July 31, 1914, a summons was issued and immediately served upon the casualty company, but returned without service upon the defendant contractor. Apparently plaintiff was in doubt touching the nature of the action, and hence the subpœna at one time and the summons at another. While the question is not free from uncertainty, I am inclined to the view that the action is upon the equity side of the court. In some contingencies at least there are adjustments to be made which are difficult to accomplish by the verdict of a jury. It was doubtless the purpose of Congress to substitute the undertaking for the right of lien which in most jurisdictions is conferred upon laborers and materialmen, in the case of private structures, and the enforcement of claimants' rights in the undertaking in a case like this is not without analogy to the enforcement and marshaling of mechanics' liens, and the distribution of the proceeds in case a sale of the property to which the liens attach is necessary. Under the statute the surety may pay into court the full amount of the penalty of the bond, and thereupon be relieved from further liability, and in such a case the proceeding very clearly takes on an equitable aspect; its only function being to equitably distribute

a given fund to numerous claimants in proportion to their several rights.

If then we adopt the view that the suit is in equity, clearly it was not commenced in time against even the security company, under the well-settled principle that such a suit is "commenced" only upon the issuance of subpœna, followed by a bona fide effort to serve the same. United States v. American Lumber Co., 85 Fed. 827, 29 C. C. A. 431; United States v. Miller (C. C.) 164 Fed. 444.

Were it deemed to be an action at law, and hence subject to the rules of practice established by the Idaho Codes, then to be sure it must be held to have been "commenced" as to the security company when the complaint was filed, on June 21, 1913; but even upon that theory the plaintiff would appear to be without footing, for if we reject the view, which I think should prevail, that as to the casualty company the action was not commenced until the amended complaint was filed, still no summons was issued until more than 13 months after the original complaint was filed, whereas the statutes of the state (section 4139, Idaho Revised Codes) authorize the issuance thereof only during the 12 months ensuing after the filing of the complaint.

It follows that the demurrer of the casualty company must be sustained, and as to it the action is dismissed. The demurrer of the contractor will be overruled, and it will be given 60 days in which to answer.