# UNITED STATES *v.* CHANDLER-DUNBAR WATER POWER COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 599.   Argued April 6, 7, 8, 1908.—Decided April 20, 1908.

Statutes of limitations with regard to land affect the right even if in terms only directed against the remedy. The act of March 3, 1891, c. 561, § 8, 26 Stat. 1099, providing that suits to vacate and annul patents theretofore issued shall only be brought within five years after the passage of the act, applies to a void patent, and where suit has not been brought within the prescribed period a patent of public lands, whether reserved or not, must be held good and to have the same effect as though valid in the first place.

On the admission of Michigan to the Union the bed of the Sault Ste. Marie, whether strait or river, passed to the State, and small unsurveyed islands therein became subject to the law of the State.

By the law of Michigan a grant of land bounded by a stream whether navigable in fact or not, carries with it the bed of the stream to the center of the thread thereof, and under this rule the patentee of government

land bordering on the Sault Ste. Marie, takes to the center line, including small unsurveyed islands between the main land and the center line; nor are the rights of riparian owners to the center affected by the fact that the stream is a boundary.

152 Fed. Rep. 25 affirmed.

THE facts are stated in the opinion.

*The Attorney General, The Solicitor General* and *Mr. Duane E. Fox*, special assistant to the Attorney General, for the United States.[1]

[1] The brief, on behalf of the United States, of over 280 pages, presented the case in the following manner as appears by the index of the brief:

Statement of the case; manner in which the questions are raised; the questions involved; specifications of errors.

Argument, I. The law of the waters; A. Locus of the islands; B. The status of the waters established by treaties; (1) The treaties of peace (Paris); (2) The treaty of Ghent; (a) Boundary established under Article VI; (b) Boundary established under Article VII; (3) The Treaty of Washington (Webster-Ashburton treaty); (4) Other treaty provisions; C. The status of the waters established by the law of nations; D. The law of riparian and littoral ownership; (1) Public and private waters; (2) The Great Lakes; (3) The connecting waters between the Great Lakes; (4) Legislative recognition by the State of Michigan of the public character of the connecting waters between the Great Lakes; (5) Michigan cases distinguished; (6) State decisions—how far controlling; (7) The distinction between inland waters of a State and international waters; (8) The question a political one; E. Former construction by the Government.

II. Title to Islands 1 and 2 in the United States.

III. The islands and adjacent shore land reserved for public uses; A. Historical statement and authorities; B. Effect of order of December 9, 1852, releasing portion of lands previously reserved; (1) The reservation of 1822; (2) The general temporary reservation of April 3, 1847; (3) The specific reservation of September 2, 1847; (4) The specific and final reservation under the act of 1850; (5) The Indian reserve of an easement; C. Further contemporaneous construction.

IV. Land in Chandler patent never surveyed.

V. Said land not subject to location with Porterfield scrip; A. Lack of legal survey; B. No price established for said land; C. Said land otherwise appropriated at the time of such location; (1) Effect of the military reservation; (2) The land within the limits of an incorporated town.

VI. The interest of the United States in this suit; A. International obligations of the United States; B. The locus needed for works in aid of commerce; C. Refusal by Circuit Court to consider the validity of appellee's alleged title to adjacent shore; D. Employment of special counsel.

*Mr. Arch B. Eldridge, Mr. Moses Hooper* and *Mr. John H. Goff* for appellee.

Mr. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the United States to remove a cloud from its alleged title to two islands, numbered One and Two, in the Sault Ste. Marie, between Lake Huron and Lake Superior. The islands are in the rapids of the river or strait, on the American side of the Canada boundary line, and near to a strip of shore lying between the rapids and the United States ship canal referred to in *United States* v. *Michigan*, 190 U. S. 379. The defendant claims this strip and the islands under a patent from the United States, dated December 15, 1883, describing the land as bounded by the river St. Mary on the east, north and west. The United States says that the patent was void because the land had been reserved for public purposes, and that even if it was valid the islands did not pass. The defendant replies that the land was not reserved, and also sets up the statute of limitations. Act of March 3, 1891, c. 561, § 8. 26 Stat. 1099. The Circuit Court dismissed the bill, and its decree was affirmed by the Circuit Court of Appeals 152 Fed. Rep. 25.

There is force in the contention of the United States that the land was reserved and that it had not been surveyed, but we find it unnecessary to state or pass upon the arguments, because we are of opinion that now the patent must be as-

VII. Statute of limitation not applicable.

VIII. Estoppel.

IX. Laches.

The appendix contained: A. Extracts from the report of the Commissioners under the treaty of Ghent; B. Diplomatic correspondence preceding the treaty of 1842; C. Extract from Article II of the treaty of 1842; D. Correspondence regarding the restoration of certain lands embraced in the temporary reservation of April 3, 1847; E. Commissions and correspondence showing the relation of special counsel to this case; F. Extract from letter of the Secretary of State to Lord Ashburton, dated July 27, 1842. There were also a number of maps.

sumed to be good. The statute just referred to provides that
"suits by the United States to vacate and annul any patent
heretofore issued shall only be brought within five years from
the passage of this act," that is to say, from March 31, 1891.
This land, whether reserved or not, was public land of the
United States and in kind open to sale and conveyance through
the Land Department. *United States* v. *Winona & St. Peter
R. R. Co.*, 165 U. S. 463, 476. The patent had been issued in
1883 by the President in due form and in the regular way.
Whether or not he had authority to make it, the United States
had power to make it or to validate it when made, since the
interest of the United States was the only one concerned. We
can see no reason for doubting that the statute, which is the
voice of the United States, had that effect. It is said that the
instrument was void and hence was no patent. But the stat-
ute presupposes an instrument that might be declared void.
When it refers to "any patent heretofore issued," it describes
the purport and source of the document, not its legal effect.
If the act were confined to valid patents it would be almost
or quite without use. *Leffingwell* v. *Warren*, 2 Black, 599.

In form the statute only bars suits to annul the patent.
But statutes of limitation, with regard to land, at least, which
cannot escape from the jurisdiction, generally are held to affect
the right, even if in terms only directed against the remedy.
*Leffingwell* v. *Warren*, 2 Black, 599, 605; *Sharon* v. *Tucker*,
144 U. S. 533; *Davis* v. *Mills*, 194 U. S. 451, 457. This statute
must be taken to mean that the patent is to be held good and
is to have the same effect against the United States that it
would have had if it had been valid in the first place. See
*United States* v. *Winona & St. Peter R. R. Co.*, 165 U. S. 463,
476.

We waste no time upon suggestions of bad faith on the one
side or the other, as there is no sufficient warrant for them,
and as they were touched rather than pressed at the argument.
The only other question is whether the United States has
title to the islands, notwithstanding its patent and notwith-

standing the incorporation of Michigan as a State. The bill admits and alleges that the bed of the river, or strait, surrounding the islands, passed to Michigan when Michigan became a State, *Pollard* v. *Hagan*, 3 How. 212; *Shively* v. *Bowlby*, 152 U. S. 1, subject to the same public trusts and limitations as lands under tide waters on the borders of the sea. *Illinois. Central R. R. Co.* v. *Illinois*, 146 U. S. 387. But it sets up that the islands remained the property of the United States, and it argues that in such circumstances the islands did not pass by the patent of the neighboring land.

The act offering Michigan admission to the Union provided that no right was conferred upon the State "to interfere with the sale by the United States, and under their authority, of the vacant and unsold lands within the limits of the said State." Act of June 15, 1836, c. 99, § 4.  5 Stat. 49, 50. And again, by a condition, that the State should "never interfere with the primary disposal of the soil within the same by the United States." Act of June 23, 1836, c. 121. *Fifth.*  5 Stat. 59, 60. The islands are little more than rocks rising very slightly above the level of the water, and contain respectively a small fraction of an acre and a little more than an acre. They were unsurveyed and of no apparent value. We cannot think that these provisions excepted such islands from the admitted transfer to the State of the bed of the streams surrounding them. If they did not, then, whether the title remains in the State or passed to the defendant with the land conveyed by the patent, the bill must fail.

The bed of the river could not be conveyed by the patent of the United States alone, but, if such is the law of the State, the bed will pass to the patentee by the help of that law, unless there is some special reason to the contrary to be found in cases like *Illinois Central Railroad Co.* v. *Illinois*, 146 U. S. 387. This view is well established. *Grand Rapids & Indiana R. R. Co.* v. *Butler*, 159 U. S. 87, 93, 94; *Hardin* v. *Shedd*, 190 U. S. 508, 519. The right of the State to grant lands covered by tide waters or navigable lakes and the qualifications, as

stated in *Shively* v. *Bowlby*, 152 U. S. 1, 47, are that the State may use or dispose of any portion of the same "when that can be done without substantial impairment of the interest of the public in such waters, and subject to the paramount right of Congress to control their navigation so far as may be necessary for the regulation of commerce." But it cannot be pretended that private ownership of the bed of the stream or of the islands, subject to the public rights, will impair the interest of the public in the waters of the Sault Ste. Marie. See *Kaukauna Water Power Co.* v. *Green Bay & Mississippi Canal Co.*, 142 U. S. 254, 271, 272. Therefore, if by the law of Michigan the bed of the river or strait would pass to a grantee of the upland, we may assume that it passed to the defendant, and we may assume further that the islands also passed. If, as we think, they belonged to the State, they passed along with the bed of the river. If they had belonged to the United States, probably they would have passed as unsurveyed islands and neglected fragments pass. *Whitaker* v. *McBride*, 197 U. S. 510; *Grand Rapids & Indiana R. R. Co.* v. *Butler*, 159 U. S. 87, 91, 92. Of course other nice questions are suggested and might be asked; for instance, how it would be if the title to the bed of the stream was in the State and did not pass with the upland, and the islands remained to the United States. It still would be a reasonable proposition that the islands followed the upland. But in the view that we have taken that may be left in doubt.

The question then is narrowed to whether the bed of the strait is held to pass by the laws of Michigan. We are content to assume that the waters are public waters. *Genesee Chief* v. *Fitzhugh*, 12 How. 443, 457. But whatever may be the law as to lands under the great lakes, *People* v. *Silberwood*, 110 Michigan, 103, we believe that the law still is as it was declared to be in *Grand Rapids & Indiana R. R. Co.* v. *Butler*, 159 U. S. 87, 94, that "a grant of land bounded by a stream, whether navigable in fact or not, carries with it the bed of the stream to the center of the thread thereof," and that this

applies to the Sault Ste. Marie, whatever it be called. The fact that it is a boundary has not been held to make a difference. The riparian proprietors upon it own to the center. *Ryan* v. *Brown,* 18 Michigan, 196; *Scranton* v. *Wheeler,* 113 Michigan, 565, 567; *Kemp* v. *Stradley,* 134 Michigan, 676. See also *Scranton* v. *Wheeler,* 57 Fed. Rep. 803, 812; *S. C.,* 179 U. S. 141, 163; *Lorman* v. *Benson,* 8 Michigan, 18; *Water Commissioners* v. *Detroit,* 117 Michigan, 458, 462. We see no plausible ground for the claim of the United States.

*Decree affirmed.*

Mr. Justice Harlan dissents.