UNITED STATES v. EXPLORATION CO., Limited, et al.

(Circuit Court, D. Colorado. October 13, 1911.)

No. 5,663.

PUBLIC LANDS (§ 120*)—SUITS TO CANCEL PATENTS—LIMITATION—CONSTRUCTION OF STATUTE.

Act March 3, 1891, c. 561, § 8, 26 Stat. 1099 (U. S. Comp. St. 1901, p. 1521), providing that suits by the United States to annul patents to lands thereafter issued shall only be brought within six years after the date of the issuance of such patents, affects not only the remedy, but the rights of parties, by making a patent conclusive as a transfer of title after the expiration of six years, although it may have been voidable, or even void, and its effect cannot be avoided by allegations of fraud in the bill, and that the fraud was concealed until after the lapse of six years.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

In Equity. Suit by the United States against the Exploration Company, Limited, and others. On demurrer to bill. Demurrer sustained.

B. D. Townsend, Spl. Asst. to Atty. Gen., for the United States.
Vaile, McAllister & Vaile, for defendants.

LEWIS, District Judge. The bill was filed on March 3rd, 1911. Its single purpose is to obtain a decree vacating and annulling nine patents issued by complainants to nine different persons, conveying in the aggregate eleven hundred and twenty (1,120) acres of coal lands theretofore belonging to the United States. Six of these patents, as shown by the bill, bear date October 16th, 1902, and three of them September 6th, 1902.

The bill charges that the Exploration Company, an English corporation, employed persons having statutory qualifications to make entries, to enter the lands in question for its use and benefit; that it paid all expenses and furnished said persons with moneys to pay the government purchase price for the lands; that the lands were selected by the Exploration Company; that the persons so employed acted solely for it, and when they received patents for the lands turned the same over to the company; that there was an agreement between the company and the persons so employed to fraudulently conceal, and in keeping with said agreement they have concealed, the fact that said persons were acting, and did act, in making their respective entries, solely for the use and benefit of the company; that by said agreement said facts were to be, and were, fraudulently concealed until the time within which suit might be brought by complainants to cancel said entries and set aside said patents, as fixed by statute, had expired, and that deeds which said entrymen agreed to execute, and did execute, conveying the lands so entered by them to said company, or to some one else at its direction, for its use and benefit, were to be, and were, fraudulently withheld from record.

It is charged that the several entrymen each conveyed the lands entered by him to defendant Alexander Burrell for the use and benefit

of the Exploration Company, that Burrell then conveyed the lands to Albert Smith for the company's use and benefit and Smith to defendant Philip L. Foster, who now holds the title in trust for the Exploration Company, and that all of these conveyances were so made at the direction of the Exploration Company in furtherance of the original fraudulent and unlawful agreement and conspiracy between the company and said entrymen by which it was to acquire complainants' said coal lands.

It is then alleged that the defendants and said entrymen successfully covered up and concealed their said fraudulent purposes and practices, and that knowledge thereof could not be obtained by complainants and no information in that regard came to them until in April, 1909.

It alleges that the defendants ought to be and are estopped and precluded from pleading or setting up lapse of time as a bar against the right of the complainants in the premises to have the relief here sought.

The prayer is for a cancellation of said patents and mesne conveyances.

It being obvious from the face of the bill that the suit was not brought within six years after the date of the issuance of each of the patents, its sufficiency is challenged by demurrers in behalf of the Exploration Company, Philip L. Foster, and Alexander Burrell, defendants; and this is the issue for present consideration.

The demurrers rest upon the claim that the act of March 3rd, 1891 (26 Stat. 1095, Sec. 8 at 1099; s. c. U. S. Compiled Stats. 1901, p. 1521), protects the defendants against the maintenance of this suit. That section, in part, reads thus:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

Oral arguments and written briefs went far and learnedly into the inquiry as to what is the binding force and effect of statutes of limitation when invoked in equity as a protection against fraud and its hiding. The different wording of the different statutes of limitation under consideration in the authorities cited was closely considered and discussed,—some of these statutes providing that the limitation period begins from the time the cause of action accrues, others, as in the instant case, fixing the time as starting from a named date. It is conceded by the defendants that under the first kind of statute the period of limitation does not begin until the fraud was, or should have been, discovered, that being the time when the cause of action accrues, which is a conclusion reached by construction of such statutes; but they insist that there is no room for construction of the statute under consideration,—because of its clear, positive and fixed terms, as well also as of the manifest purpose which it is intended to serve. To this they cite In re Brown, 4 Fed. Cases No. 1,983; Pickett v. McGavick, 19 Fed. Cases No. 11,126; U. S. v. Maillard, 26 Fed. Cases No. 15,709, and others; and also the debates and proceedings in Congress on the enactment of this statute.

I do not find it necessary to determine whether the authorities establish that statutes of the first kind cannot be availed of to protect against fraud for the reason above given, or whether, as contended by complainants, the true reason in equity is that such statutes cannot be made an instrument of fraud,—and thus, with the latter reason in hand, strike down every such claim regardless of the terms or phrasing of the statute. And this because, this statute has been dealt with and fully considered, in cases which control the action of this court, wherein its purpose and effect, applicable here, is unmistakably declared. Those cases are United States v. Winona, etc., R. R., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789; United States v. Chandler-Dunbar W. P. Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881; Louisiana v. Garfield, 211 U. S. 70, 29 Sup. Ct. 31, 53 L. Ed. 92.

In the Winona case Mr. Justice Brewer, speaking for the court, said of this statute:

"Thus, in the act of 1891, it (the government) provided that suits to vacate and annul patents theretofore issued should only be brought within five years, and that as to patents thereafter to be issued such suits should only be brought within six years after the date of issue. Under the benign influence of this statute it would matter not what the mistake or error of the Land Department was, what the frauds and misrepresentations of the patentee were, the patent would become conclusive as a transfer of the title, providing only that the land was public land of the United States and open to sale and conveyance through the Land Department."

In the Chandler-Dunbar case the court, through Mr. Justice Holmes, said:

"The patent had been issued in 1883 by the President in due form and in the regular way. Whether or not he had authority to make it, the United States had power to make it or to validate it when made, since the interest of the United States was the only one concerned. We can see no reason for doubting that the statute, which is the voice of the United States, had that effect. It is said that the instrument was void and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents it would be almost or quite without use. Leffingwell v. Warren, 2 Black, 599 [17 L. Ed. 261].

"In form the statute only bars suits to annul the patent. But statutes of limitation, with regard to land, at least, which cannot escape from the jurisdiction, generally are held to affect the right, even if in terms only directed against the remedy. Leffingwell v. Warren, 2 Black, 599, 605 [17 L. Ed. 261]; Sharon v. Tucker, 144 U. S. 533 [12 Sup. Ct. 720, 36 L. Ed. 532]; Davis v. Mills, 194 U. S. 451, 457 [24 Sup. Ct. 692, 48 L. Ed. 1067]. This statute must be taken to mean that the patent is to be held good and is to have the same effect against the United States that it would have had if it had been valid in the first place. See United States v. Winona & St. Peter R. R. Co., 165 U. S. 463, 476 [17 Sup. Ct. 368, 41 L. Ed. 989]."

In the Garfield case the Supreme Court had under consideration the effect of an act of Congress purporting to grant swamp lands to the state of Louisiana. The act did not provide for the issuance of a patent but provided that the fee to the lands should pass to Louisiana on approval of a list by the Secretary of the Treasury. The court did not determine the question as to whether the limitation statute here being considered could be invoked to protect the asserted title of the

state under the provisions of that act and the approval of the Secretary. Speaking to this point, through Mr. Justice Holmes, it said:

"The only doubt is raised by the statute limiting suits by the United States to vacate patents to five years. Act of March 3rd, 1891, c. 561, § 8, 26 Stat. 1099. It may be that this act applies to approvals when they are given the effect of patents as well as to patents, which alone are named. In United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447 [28 Sup. Ct. 579, 52 L. Ed. 881], it was decided that this act applied to patents even if void because of a previous reservation of the land, and it was said that the statute not merely took away the remedy but validated the patent."

There was no active fraud involved in any of these cases, though Mr. Justice Brewer considered the statute in question in that aspect. Each of these cases holds that the statute is to be applied not only against the remedy but that it affects the rights of the parties, that on the expiration of the time limited the patent becomes conclusive as a transfer of the title, notwithstanding it may have been voidable; indeed, though it may have been void, nevertheless the statute must be taken to mean that the patent becomes validated on the expiration of six years after its date and passes the title to the patentee as effectively as though it had been valid in the first instance. Thus the statute is made an inflexible rule of property; as much so as statutes which pass title through open, notorious, adverse and continuous possession maintained for a fixed period.

Additional authority to the same effect, by which we feel bound, is the opinion of the Court of Appeals for the Sixth Circuit in the Chandler-Dunbar case found in 152 Fed. 25, 29, 81 C. C. A. 221, 225, where it is said:

"But we add that the general rule is that possession of land under a claim of title for the period prescribed by a statute of limitations vests the title in him for whose protection the statute creates the limitation; and if, as we think, possession is not necessary under this statute, the lapse of time is of itself sufficient to effect the same result. The right of action of the United States, assuming it to have had any, was complete at the date of the passage of the act, and the lapse of five years without action to annul the grant resulted in the confirmation of it."

In United States v. Smith (C. C.) 181 Fed. 545, District Judge Bean had under consideration the effect of this statute in a case involving actual fraud, and in that respect he expresses his views thus on page 554:

"As to them (eight patents) the suit is barred, for in my judgment the statute begins to run from the date of the issuance of the patent, and not from the discovery of the fraud. The language of the statute is plain and leaves no room for construction. It says suits of the United States to vacate or annul patents shall only be brought within six years after the issuance of patent. * * * The object of this statute is to extinguish any right the government may have in the land and vest a perfect title in the adverse holder after six years from date of the patent, regardless of any mistake or error in the Land Department, or the fraud or imposition of the patentee."

See also United States v. American Lumber Co., 85 Fed. 827, 832, 29 C. C. A. 431, 436:

"In the present case no doubt is suggested by the language of the statute, and there is no room for construction. It is clear that Congress has said

that all suits by the United States to vacate patents shall be brought within the period limited by the act."

It therefore appearing from the bill itself that this suit was not brought within six years after the date of the issuance of each and all of the patents sought to be vacated and annulled, the bill is insufficient and the demurrers, and each of them, are well taken. They are sustained and it is so ordered.