UNITED STATES v. EXPLORATION CO., Limited, et al.†

(Circuit Court of Appeals, Eighth Circuit. January 13, 1913.)

No. 3,808.

**1. APPEAL AND ERROR (§ 327\*)—PARTIES—APPELLEES.**

One made a party defendant merely because he was a conduit through which title to lands in controversy passed to the real defendants, and who as shown by the record had no interest in the suit, need not be joined in an appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1814–1820, 1822–1835; Dec. Dig. § 327.\*]

**2. LIMITATION OF ACTIONS (§ 100\*)—SUITS TO CANCEL PATENTS—LIMITATION—CONSTRUCTION OF STATUTE.**

Act March 3, 1891, c. 561, § 8, 26 Stat. 1099 (U. S. Comp. St. 1901, p. 1521), providing that suits by the United States to cancel patents to lands thereafter issued shall only be brought within six years after the date of the issuance of such patents, is subject to the long-established equitable rule that in suits for fraud, where the fraud has been concealed, limitation does not begin to run until its discovery by the party defrauded, and cannot be invoked in bar of a suit to cancel patents to lands fraudulently acquired through dummy entries, where the perpetrators and beneficiaries of the fraud, by means of secret conveyances purposely withheld from record, have concealed it until after six years from the date of the patents, and where the suit is commenced within six years from the time the fraud was or could have been discovered by the officers of the government.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.\*]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit in equity by the United States against the Exploration Company, Limited, and Philip L. Foster. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 190 Fed. 405.

B. D. Townsend, Sp. Asst. Atty. Gen., of Washington, D. C. (Harry E. Kelly, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Henry McAllister, Jr., of Denver, Colo. (Joel F. Vaile and William N. Vaile, both of Denver, Colo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Colorado, dismissing upon demurrer a bill of the United States filed for the purpose of having set aside and declared null and void certain patents for coal lands.

[1] Appellees move to dismiss the appeal for the reason that Alexander Burrell was a party defendant in the court below, and is not made a party on this appeal. We do not think the record shows that Burrell had any interest in the subject-matter of the suit. There is a

general allegation in the bill that the defendants, including Burrell, claimed some interest in the lands in controversy; but this allegation must be construed as to Burrell with reference to the specific allegation that he was simply a conduit through which the title to the lands passed to one Smith, and that he took no beneficial interest therein. Taking the allegations of the bill to be true, no relief could be granted thereunder against Burrell. The motion to dismiss, therefore, will be denied.

The bill was dismissed in the court below for the reason that the statute of limitations (Acts March 3, 1891, cc. 559, 561, § 8, 26 Stat. 1093, 1099 [U. S. Comp. St. 1901, p. 1521], and Act March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]) had barred the action. The statute referred to, so far as material, reads as follows:

"That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents."

The bill charged that the Exploration Company was a corporation organized and existing under the laws of Great Britain, and that neither said Exploration Company nor any of its officers or stockholders were qualified by law to enter, purchase, or hold any of the coal lands of the United States under any of the public land laws; that, notwithstanding this, the Exploration Company, through its duly authorized officers and representatives, devised a scheme to defraud the United States of the title, use, and possession of a large quantity of valuable coal lands situate in the state of Colorado, including the lands particularly described in the bill; and that this scheme to defraud was to be accomplished by means of what are known as "dummy" entries. The bill sets forth in detail the false and fraudulent affidavits and other means by which the officers of the United States were induced to issue patents. Six of the patents in suit were dated October 16, 1902, and three were dated September 16, 1902. The fraud was discovered in 1909, and the bill filed March 3, 1911.

Anticipating the defense of the statute of limitations, above quoted, the bill charged that it was a part of the conspiracy that the frauds perpetrated upon the United States should be, and that they in fact were, concealed from the United States until after six years had elapsed from the date of the issuance of the patents, for the express purpose of defrauding the United States of its equitable remedy, namely, a cancellation of the patents. The bill also charged that this purpose of concealment was accomplished by affirmative acts of fraud consummated by and on behalf of the defendants during the period of concealment. These subsequent fraudulent acts included (a) the execution of conveyances by the "dummy" entrymen, which conveyances were in fact executed at the time applications were made to enter the lands, but the dates of which were left blank, and afterwards false dates inserted; (b) the execution of several mesne conveyances to secret trustees, through which the title was finally merged in the defendant Exploration Company; (c) the withholding from the records

and from the knowledge of the United States of these conveyances, which, if known, would have disclosed the true facts in the premises. Other fraudulent devices to conceal the transaction are also alleged.

[2] The question presented for decision is concisely stated in appellant's brief, as follows:

"If the United States is defrauded of public lands by means of 'dummy' entries, and the perpetrators and beneficiaries of the fraud by subsequent and affirmative acts of fraud conceal the original fraud from the knowledge of the government until after six years have elapsed from the date of the issuance of the patents, will a court of equity permit the wrongdoers to enjoy the fruits of their fraud, by pleading the statute of limitations as a defense, when the delay in the institution of suit was deliberately induced by fraud practiced upon the government for the express purpose of gaining the benefits of the statute?"

This is an equitable action in a court of equity, and the statute of limitations was passed with direct reference to this class of actions, so there can be no controversy over the binding force of the statute. It is not ambiguous, and its construction is not difficult in ordinary actions of fraud to set aside patents for land. The real question before us is whether the enactment of the statute repealed the equitable rule, enforced by courts of equity, that, when the object of the suit is to obtain relief against a fraud, the bar of the statute does not commence to run until the fraud is discovered or becomes known to the party injured by it. The existence of this rule cannot be questioned. In Bailey v. Glover, 88 U. S. (21 Wall.) 342, 347, 348 (22 L. Ed. 636), Mr. Justice Miller, in delivering the opinion of the court, said:

"In suits in equity, where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud. We also think that in suits in equity the decided weight of authority is in favor of the proposition that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. Booth v. Lord Warrington, 4 Brown's Parliamentary Cases, 163; South Sea Co. v. Wymondsell, 3 Peere Williams, 143; Hovenden v. Lord Annesley. 2 Schoales & Lefroy, 634; Stearns v. Page, 7 How. 819 [12 L. Ed. 928]; Moore v. Greene, 19 How. 69 [15 L. Ed. 533]; Sherwood v. Sutton, 5 Mason, 143 [Fed. Cas. No. 12,782]; Snodgrass v. Bank of Decatur, 25 Ala. 161 [60 Am. Dec. 505]. * * * And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds—to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

In Kirby v. Lake Shore, etc., Railroad, 120 U. S. 130, 136, 7 Sup. Ct. 430, 433 (30 L. Ed. 569), Mr. Justice Harlan said:

"Be that as it may, it is an established rule of equity, as administered in the courts of the United States, that, where relief is asked on the ground

of actual fraud, especially if such fraud has been concealed, time will not run in favor of the defendant until the discovery of the fraud, or until, with reasonable diligence, it might have been discovered. Meader v. Norton, 11 Wall. 442, 458 [20 L. Ed. 184]; Prevost v. Gratz, 6 Wheat. 481 [5 L. Ed. 311]; Michoud v. Girod, 4 How. 503, 561 [11 L. Ed. .1076]; Veazie v. Williams, 8 How. 134, 149, 158 [12 L. Ed. 1018]; Brown v. Buena Vista County, 95 U. S. 157 [24 L. Ed. 422]; Rosenthal v. Walker, 111 U. S. 185, 190 [4 Sup. Ct. 382, 28 L. Ed. 395]; 2 Story, Eq. § 1521a; Angell on Limitations."

In Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267, the Circuit Court of Appeals of the Ninth Circuit enforced the rule referred to in the above citations, where the same statute as is here involved was pleaded in bar of the action.

It will be found from an examination of the cases cited that the rule enunciated by them did not arise from the construction of any particular statue of limitations, but was a rule of equity jurisprudence established soon after the enactment of the Limitations Act of 1623 (St. 21 James I, c. 16). This act contained no exception in regard to actions for fraud, where the fraud had been concealed; but the courts of equity in England established the rule upon the ground that:

"As fraud is a secret thing, and may remain undiscovered for a length of time, during such time the statute of limitations shall not operate, because, until discovery, the title to avoid it does not completely arise." Hovenden v. Lord Annesley, 2 Schoales & L. 634.

The rule was considered by Mr. Justice Story in Sherwood v. Sutton, 5 Mason, 143 (1828) Fed. Cas. No. 12,782. In this case the statute of limitations of New Hampshire had been pleaded as a bar to an action for fraud and deceit in the sale of a vessel. There was a replication that there was a fraudulent concealment of the deceit until within the six-year period of limitation provided by the statute. On motion in arrest of judgment the replication was held good. The statute of New Hampshire was substantially a transcript of St. 21 James I, c. 16, and contained no special exception as to actions founded upon fraud where the fraud had been concealed during the period of limitation. The learned justice, after reviewing the English decisions, said:

"The inference deducible from this view of the cases is that the construction adopted by these courts, that the concealment of the fraud avoids the bar of the statute of limitations, is founded in solid sense, and is a natural limitation upon the language of the statute. I do not stop to inquire whether it is to be deemed an implied exception out of the words of the statute, or whether the right of action, in a legal sense, does not accrue until the discovery of the fraud. The authorities present some diversity of judgment in this respect. Perhaps the true mode of considering it would be that it is a continuing fraud during the whole period of its concealment, thus knitting it to the original wrong."

Counsel for appellees admit the existence of the rule stated above, but insist that it can only be invoked where the statute of limitations provides that the period of limitation shall commence to run from the cause of action or from the accrual of the cause of action, and that where, as in the present case, the period of limitation commences to run from a fixed date, namely, the date of the patent, that the Legislature has thereby repealed this equitable rule; or, in other words, the rule cannot be enforced by a court of equity in respect to the present statute. It must be admitted that whether a period of limitation com-

mences to run from a fixed date, or whether it commences to run from the accrual of the cause of action, affects in no way the reason upon which the rule is based. Take the present statute: It fixes the date of the patent as the time from which the six-year period shall run. Let us suppose that the statute had fixed the accrual of the cause of action as the time from which the six-year period of limitation should run. It will be seen that in the absence of the rule of concealed fraud the date in both cases would be the same, for the reason that the date of the patent would be the date of the accrual of the cause of action. Still it is claimed that because Congress fixed the date of the patent as the time from which the period of limitation should run, and not the time of the accrual of the cause of action, both dates being identical in the absence of the rule as to concealed fraud, that Congress thereby intended to, and did, abrogate in its entirety an old and undisputed principle of equity jurisprudence.

We should hesitate to impute to the lawmaking power such an intention for many reasons: First, there is nothing in the language of the statute which evidences any such intention; second, it would impute to Congress a desire to deprive the United States, in cases of concealed fraud, of a remedy to cancel patents obtained by fraud; third, it would make of a statute enacted to prevent fraud a formidable instrument for the making of fraud successful; fourth, there is no reason why the equitable rule in regard to concealed fraud should not be applied where the statute of limitations fixes a date certain, as well as where the statute provides that the limitation period shall run from the accrual of the cause of action; fifth, it would render it possible for one who had defrauded the United States of land to prevent an inquiry in regard to the same by the commission of additional fraud; sixth, it would permit one to set off one fraud against another; seventh, it would allow one to take advantage of one's own wrong, which is not to be thought of in a court of equity. The truth is that the rule in regard to concealed fraud is so instinct with justice and common sense that it has been adopted by statute in the following states: Alabama, California, Connecticut, Iowa, Maryland, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New York, North Carolina, North Dakota, Ohio, South Carolina, Washington, Wisconsin, Oklahoma, and Utah.

We will now consider the cases which are cited in support of the contention of counsel for appellees.

United States v. Winona, etc., Railroad, 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789, is cited as a case which construed the statute now under consideration, and it is claimed that it was therein determined that it would matter not what the mistake or error of the land department was, what the frauds and misrepresentations of the patentees were, the patent, under the statute, after six years from its date, would become conclusive as a transfer of the title, provided only that the land was public land of the United States and open to sale and conveyances through the land department. This is practically the language used by Mr. Justice Brewer, at page 476 of 165 U. S., at page 371 of 17 Sup. Ct. (41 L. Ed. 789), in the opinion. An examination of the case, however, demonstrates beyond controversy that the limitation portion

of the act of 1891, as amended in 1896, was not before the court in any respect. Just following the language above stated, Mr. Justice Brewer said:

"It is true that these appellees cannot avail themselves of these limitations because this suit was commenced before the expiration of the time prescribed, and we only refer to them as showing the purpose of. Congress to uphold titles arising under certification or patent by providing that after a certain time the government, the grantor therein, should not be heard to question them."

The limitation portion of the statute was not before the court for construction, and certainly no question of concealed fraud. The court did apply that portion of the statute which protects bona fide purchasers. The case is no authority whatever in support of the position of counsel for appellees.

United States v. Chandler-Dunbar Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881, was a case where the United States sought to annul a patent for the reason that the land had been reserved for public purposes prior to. the issuance of the patent. The Supreme Court decided that, whether this was true or not, the statute now under consideration barred a recovery by the United States. There was no question of concealed fraud in the case, and we see no reason why, in the absence of concealed fraud, the statute should not be enforced according to its terms.

Louisiana v. Garfield, 211 U. S. 70, 29 Sup. Ct. 31, 53 L. Ed. 92, is a case in which the statute involved in this action was in no wise in issue. The court there expressed a doubt as to whether the statute now being considered applied to approvals which are given the effect of patents, as well as to patents; but the court said that the doubt could not be resolved in that case, as it raised questions of law and fact upon which the United States would have to be heard.

Alexander H. Mall & Co. v. Ullrich (D. C.) 37 Fed. 653, was a case in the Northern district of Ohio, in which Judge Welker, in a memorandum, decided that section 5120 of the Revised Statutes (bankrupt law) provided an absolute bar where the petition was not filed within two years from the date of the discharge of the bankrupt. Such statutes stand in the same position as statutes relating to the time in which appeals may be taken, and the case is not applicable to the question now before us.

United States v. Maillard et al., Fed. Cas. No. 15,709, was decided by Blatchford, District Judge, in 1871. Judge Blatchford held that, where a statute does not make a fraudulent concealment of the existence of the cause of action an exception to the running of the statute, the court has no right or power to make such exception, either directly, or by the indirect method of saying that the cause of action does not accrue in the case of a fraudulent concealment until the discovery of the fraud. In so deciding, the learned judge refused to follow Mr. Justice Story in Sherwood v. Sutton, supra, but followed the Supreme Court of New York. Troup v. Smith's Executors, 20 Johns. 33. In view of the fact that this case was decided in 1871, and that Bailey v. Glover, supra, was decided in 1874, we see no reason for citing it.

Pickett v. McGavick, Fed. Cas. No. 11,126, decided by Parker, Dis-

trict Judge, in 1876, was another suit to set aside the discharge of a bankrupt, and it was there held that the two years provided by statute in which a suit could be brought to set aside the discharge ran from the date of the discharge, irrespective of when the fraud was discovered. In re Brown, Fed. Cas. No. 1,983, decided by Choate, District Judge, in 1879 is to the same effect. In regard to these two cases, they may have been correctly decided; but we make the same observation in relation to them that we did as to Mall v. Ullrich, supra.

United States v. Smith (C. C.) 181 Fed.. 545, wherein District Judge Dean held that the period of limitation contained in the statute under consideration began to run from the date of the issuance of the patent, and not from the discovery of the fraud, was disapproved of on appeal in Linn & Lane Timber Co. v. United States, supra.

United States v. American Lumber Co., 85 Fed. 827, 29 C. C. A. 431, is also cited. The Circuit Court of Appeals of the Ninth Circuit, which decided this case, in Linn & Lane Timber Co. v. United States, above mentioned. shows that it is no authority to support the position of counsel for appellees.

We are therefore clearly of the opinion that the decree appealed from must be reversed, and the case remanded to the United States District Court for the District of Colorado, with instruction to overrule the demurrer and allow appellees to plead to the bill.

And it is so ordered.