UNITED STATES v. EXPLORATION CO., Limited, et aL

(District Court, D. Colorado.   August 9, 1915.)

No. 5663.

1. LIMITATION OF ACTIONS ☞100—CANCELLATION OF PATENTS—FRAUD—STAT-
   UTE OF LIMITATION.

   A foreign mining company, being unable, under the laws of the United
   States, to acquire coal lands which were part of the public domain, ar-
   ranged that individuals should obtain title by entry to such lands, the
   accumulated holdings coming through various mesne conveyances into
   the hands of a trustee for the agent of the corporation in this country,
   there being no affirmative acts of concealment of the illegal practices;
   the patents to the land being issued in September, 1902, no facts having
   become known to the government that the patents to the lands had been
   obtained by false affidavits until 1909, when the discovery was made
   upon investigation of all public coal land patents.   Suit was brought
   within two years thereafter for the cancellation of the patents.   *Held*,
   that recovery by the United States was not barred by the six-year stat-
   ute of limitations of Act March 2, 1896, c. 39, 29 Stat. 42 (Comp. St. 1913,
   §§ 4901–4903), providing that suit by the United States to vacate and
   annul any patent to lands hereafter issued shall only be brought within
   six years after date of issuance.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323,
   480–493; Dec. Dig. ☞100.]

2. MINES AND MINERALS ☞45—CANCELLATION OF PATENTS—PARTY DEFEND-
   ANT.

   Where the government sued a foreign corporation to annul patents to
   coal lands which it had fraudulently secured, the lands in controversy
   having been entered by individuals for the benefit of an old foreign cor-
   poration of the same name as defendant, defendant having been organ-
   ized with the same officers as the old company to hold all assets of such
   company that were of doubtful value, it was wholly *immaterial* that the
   government's suit was against defendant, and not against the old com-
   pany, for which the lands were held in trust by an individual, since no
   such expedient of separate corporate entities could avoid the consequences
   of fraud, while good faith on part of defendant required that such de-
   fense should have been called to the attention of plaintiff by defendant's
   pleading.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 131;
   Dec. Dig. ☞45.]

In Equity.   Suit by the United States against the Exploration Com-
pany, Limited, and another.   Decree for the United States.

Frank Hall, Sp. Asst. Atty. Gen., for the United States.   ·

Henry McAllister, Jr., and George E. Tralles, both of Denver, Colo.,
for defendants.

TRIEBER, District Judge.   This is an action by the government
to cancel and set aside patents issued for a number of tracts of land
obtained under the coal land statutes, on the ground that they were
obtained by fraud.   The material allegations of the complaint are
set out fully in the opinion of the United States Circuit Court of Ap-
peals, when this case was in that court on appeal from a decree sus-
taining the demurrer to the complaint (203 Fed. 387, 121 C. C. A.
491), and need not be set out here.   The answer of the defendants de-

nies all the material allegations, but no claim is made that the defendants are bona fide purchasers. There was very little conflict in the evidence, and the court finds the facts to be as follows:

The defendant, which will be referred to herein as the Exploration Company, is a corporation existing under the laws of Great Britain, authorized by its articles of incorporation to purchase, own, and operate mines, and purchase and own shares of stock in mines, in all parts of the world. That it was the owner of mines and mining lands in different parts of the world, and also of the shares of corporations engaged in mining in the United States and other countries. In 1901, and for several years thereafter, it had a representative in the United States by the name of Charles A. Molson, to whom it had executed a general power of attorney to represent it in all matters in the United States. This agent resided at Salt Lake City, Utah. The exploration Company, being desirous of acquiring coal lands in the state of Colorado, which were a part of the public domain of the United States, and being unable to do so, by reason of the fact that it was a foreign corporation, and besides, desiring more of these coal lands than it could, even if it were a domestic corporation, obtain under the laws of the United States, it conceived and carried into effect the following scheme for the purpose of acquiring them:

Mr. Molson employed one Henry Burrell to obtain the title to these lands. Burrell employed other agents, who were sent to residents of the state of Colorado, who, under the laws, could acquire public coal lands from the United States, and induced them to make entries of such lands as were pointed out to them by these agents of the Exploration Company, and which were supposed to contain valuable veins of coal. A large number of such entries were made on such lands, which were lying in the counties of Gunnison and Delta; the parties filing declaratory statements, as required by law. Many of these lands thus filed on were abandoned and no patents applied for, as, upon investigation, they were found not to contain sufficient coal to justify their purchase; but the filings on the lands in controversy were paid for and patents therefor secured. Henry Burrell was a witness in most, if not all, of these entries. The parties who made these entries were promised the sum of $25 for their services. All fees, as well as the purchase money, were to be paid by Burrell with money furnished by the Exploration Company. As soon as the final proofs were made and the money paid by the agent of the Exploration Company to the respective officers of the land offices within whose jurisdiction the lands were situated, the entry men and women executed deeds of conveyance for their respective tracts of land and delivered them to Henry Burrell. These deeds Henry Burrell caused to be made to Alexander Burrell, his brother. Some time later Alexander Burrell conveyed these lands to one Albert L. Smith, a banker in Helena, Mont., without any consideration except the promise of Smith to hold them in trust for and to convey them to any person designated by the agent of the Exploration Company. Charles A. Molson, the agent, having died, the Exploration Company appointed the defendant Philip L. Foster as its general agent in the United States, with a power of attorney to act generally in its behalf. Thereupon Albert L. Smith,

at the request of the defendant's agents, conveyed these lands to Mr. Foster without any other consideration. The legal title has ever since been in Mr. Foster, who holds it in secret trust for the Exploration Company.

The patents to these lands were issued by the government in September, 1902, but the fact that they were secured by false affidavits, and not for the benefit of the entry men and women, but for the sole benefit of the Exploration Company, and that the purchase money paid to the government was the Exploration Company's money, was kept secret, and did not become known to any of the officers of the government, nor did any facts become known to them which could arouse the suspicion of one exercising reasonable diligence that the patents to these lands had been obtained by false affidavits and for the benefit of the defendant Exploration Company, until 1909, more than six years after the patents had been issued, and then it only became known to the officers of the government by reason of the fact that a Utah corporation had acquired a great many of the public coal lands in the same manner as these lands were obtained, and that being discovered in 1909, the Secretary of the Interior directed in that year an examination of all coal entries made in the states of Utah and Colorado. When these investigations were made, the facts were for the first time discovered as hereinbefore recited. There was nothing in the records, or on file in the General Land Office of the United States or the Department of the Interior which could possibly have aroused a suspicion that these lands had been obtained for the benefit of the Exploration Company, until the reports of the special agents of the General Land Office were made the latter part of 1909. As soon as the facts were ascertained, the Secretary of the Interior transmitted them to the Department of Justice with the request to institute suits to set aside the patents, and this suit was filed on March 3, 1911, within several months less than two years after the discovery of the alleged fraudulent acts.

The court also finds that the defendants did not actively conceal the facts which constitute the frauds in this case, by enjoining silence on the entry men and patentees, or directing them or the agents who acted for it to refuse to give any information relating to these entries, if asked by the officers of the government, but were only guilty of a passive concealment. When the investigation was made by the special agents of the General Land Office, in 1909, in relation to these entries, the patentees as well as the company's agents stated the facts truthfully, but until that time the fact that the entries were all made for the benefit of the company, and that the legal title held by the defendant Foster was for the benefit of the Exploration Company, was concealed; nor were there any facts or circumstances within the knowledge of any official of the government, prior to the investigation in 1909, which could arouse even a bare suspicion that these entries were made in the manner and for the benefit of the Exploration Company, as hereinbefore set out.

Counsel for the defendants concede that the decision of the Circuit Court of Appeals in this case is conclusive, so far as this court is concerned, that Act March 2, 1896, c. 39, 29 Stat. 42, does not bar an action to set aside a patent for public lands, on the ground of

fraud, after the expiration of six years, if the parties who perpetrated the frauds and their beneficiaries have concealed it for the period of limitations, and the government has not been guilty of any want of diligence or care to discover it if the action is brought within proper time after the discovery of the fraud. But it is contended that as the only question before the court on that appeal was the sufficiency of the complaint, to which a demurrer had been sustained by the District Court (190 Fed. 405), the decision must be limited to the facts as they were alleged in the complaint; that the complaint charged in specific terms that the ignorance of the fraud had been caused by affirmative acts of concealment of the guilty parties, while at the hearing the evidence shows, and the court so finds, that the parties were not guilty of any active or affirmative concealment of their acts which are alleged to constitute the fraud for which the patent should be set aside, but were only guilty of passive concealment.

The authorities upon which counsel for both sides rely to sustain their respective contentions are quite numerous, many of them being decisions of the Circuit and District Courts of the United States, as well as of the highest courts of a number of states. In view of the fact that in the opinion of this court this question has been conclusively determined by numerous decisions of the Supreme Court of the United States, the court will confine itself to a review of the decisions of that court only.

The English courts had long ago uniformly held that where a person has been injured by the fraud of another, and the facts constituting such fraud do not come to the knowledge of the person injured until some time afterward, the statute of limitations will not commence to run until the discovery of those facts, or until, by reasonable diligence they might have been discovered, if relief is sought in a court of equity. Booth v. Lord Warrington, 4 Bro. Parliamentary Cases, 163; South Sea Co. v. Wymondsell, 3 P. Wms. 143; Hovenden v. Lord Annesley, 2 Schoales & Lefroy, 607, 631; Blennerhassett v. Day, 2 Ball & Beatty, 104, 129. This rule has been followed by the Supreme Court in numerous cases.

[1] A leading case on this subject, and which has never been questioned, is Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636. As stated by Mr. Justice Wood in delivering the unanimous opinion of the Supreme Court in Traer v. Clews, 115 U. S. 528, 538, 6 Sup. Ct. 155, 159, 29 L. Ed. 467:

"It has never been overruled, doubted, or modified by this court."

In that case the court reviews the English cases, as well as its former decisions, and the conclusion there reached was:

"In suits in equity, where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud. We also think that in suits in equity the decided weight of authority is in favor of the proposition that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though

there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. Booth v. Lord Warrington, 4 Brown's Parliamentary Cases, 163; South Sea Co. v. Wymondsell, 3 Peere Williams, 143; Hovenden v. Lord Annesley, 2 Schoales & Lefroy, 634; Stearns v. Page, 7 How. 819, 12 L. Ed. 928; Moore v. Greene, 19 How. 69, 15 L. Ed. 533; Sherwood v. Sutton, 5 Mason, 143, Fed. Cas. No. 12,782; Snodgrass v. Bank of Decatur, 25 Ala. 161, 60 Am. Dec. 505. * * * And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds—to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

Other cases to the same effect are Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; Traer v. Clews, supra; Kirby v. Lake Shore, etc., Railroad Co., 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569, and quoted with approval by the Circuit Court of Appeals when this case was decided on the former appeal. But it is claimed on behalf of the counsel for the defendants that Bailey v. Glover, although not expressly overruled, has been modified by later decisions which in effect overrule the principle involved in the instant case. The cases upon which he relies are Kirby v. Lake Shore, etc., Railroad Co., supra; United States v. Winona Railroad Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789; Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862, 36 L. Ed. 719; Pearsall v. Smith, 149 U. S. 231, 13 Sup. Ct. 833, 37 L. Ed. 713; United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881; Kinder v. Scharff, 231 U. S. 517, 34 Sup. Ct. 164, 58 L. Ed. 343; Burke v. Southern Pacific Railroad Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527. A careful examination of these authorities shows that this contention of counsel cannot be sustained.

Kirby v. Lake Shore, etc., Railroad Co. is clearly distinguishable upon the facts from this case. That case follows with approval what was decided in Bailey v. Glover; but as the plaintiff did not institute his action until the expiration of nearly 7 years after the fraud was discovered, while the statute of limitations of the state of New York, which was pleaded in that case, limited such an action to 6 years, the court held that, as the full period of limitations had expired after the discovery of the fraud, the action was not brought in time.

In Felix v. Patrick, it was held that, 27 years having elapsed from the time the cause of action accrued, the plaintiff was guilty of such laches as would prevent a court of equity from granting any relief.

In Pearsall v. Smith, it was held that, the complainant failing to state how he came to be so long ignorant of his rights, the means, if any, used by the defendants fraudulently to keep him in ignorance, or how and when he first obtained knowledge of the matters alleged in the bill, the bar of the statute was not tolled.

United States v. Winona Railroad Co. was shown by the Circuit Court of Appeals in its opinion in this case not to be applicable to the

facts in this case, and the reasons therefor are so fully stated there that it is unnecessary to repeat them here.

The Chandler-Dunbar Water Power Company Case can have no application to the facts in this case, for there the question involved was not one of fraud, but the claim of the government was that the land in controversy had been reserved from sale. The court held that such an error of judgment on the part of the officers of the government was intended to be barred by the act of Congress herein relied on.

In Kinder v. Scharff, which was on error to the Supreme Court of Louisiana, it had been found by the state court that during the pendency of the original proceeding the trustee suspected the alleged fraud, made some inquiries, but dropped the matter, because he thought it was not worth while; that is, that it would not pay to go further. He voluntarily abstained from availing himself of the means put in his hand by the law itself for the ascertainment of a suspected fact by examining the bankrupt and otherwise, and upon this finding of fact, which, on error to the highest court of the state, is conclusive, the court held that the plaintiff could not recover, distinguishing the case upon these facts from Bailey v. Glover.

In Burke v. Southern Pacific Railroad Company the patent was collaterally attacked by an adverse claimant. The case came before the court on certificate, and the fourth question certified was:

"If the reservation of mineral lands as expressed in the patent is void, then is the patent, upon a collateral attack, a conclusive and official declaration that the land is agricultural and that all the requirements preliminary to the issuance of the patent have been complied with?"

And the answer was:

"It is conclusive upon collateral attack."

It is true there were other questions certified to the court, and answered; but the case was not an action on the part of the government to set aside the patent for fraud, but a collateral attack upon the validity of the patent by one claiming the land as a settler.

Counsel also rely upon Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807. That was an action at law, and necessitated the construction of a statute of limitations of the state of Indiana, which had adopted the equitable rule ingrafted upon the statute by the English courts of equity. While there are some expressions to be found in that opinion which apparently sustain the contention of counsel for defendants, an examination of the facts set out in the opinion shows that it in no wise affects the principle established in Bailey v. Glover, or any of the later cases hereinbefore cited. The court said:

"Upon looking carefully into the reply, we find it sets forth that the concealment touching the cause of action was effected by the defendant by means of the several frauds and falsehoods averred more at length in the complaint. The former is only a brief epitome of the latter. There is the same generality of statement and enumeration, and the same absence of specific details in both. No point in the complaint is omitted in the reply, but no new light is thrown in which tends to show the relation of cause and effect, or, in other words, with the protracted concealment, which is admitted, necessarily followed from the facts and circumstances which are said to have produced it.

It will be observed also that there is no averment that, during the long period over which the transactions referred to extended, the plaintiff ever made or caused to be made the slightest inquiry in relation to either of them. The judgments confessed were of record, and he knew it. It could not have been difficult to ascertain, if the facts were so, that they were shams. The conveyances to Alvin and Kellar were also on record in the proper offices. If they were in trust for the defendant, as alleged, proper diligence could not have failed to find a clue in every case that would have led to evidence not to be resisted. With the strongest motives to action, the plaintiff was supine. If underlying frauds existed, as he alleges, he had to unearth them. It was his duty to make the effort. It should be borne in mind that when the judgments were assigned to Kellar the country was in the throes of the Civil War. Lee had not surrendered. Gold and silver, in the currency of the time, were at a high premium. All real property was largely depreciated. The future was uncertain. The transaction which then seemed wise and fortunate, a year later might be deemed greatly otherwise. It is hard to avoid the conviction that the plaintiff's conduct marks the difference between forethought in one condition of things and afterthought in another. The discovery of the cause of action, if such it may be termed, is thus set forth: 'And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year 1872, and a few weeks only before the bringing of this suit.' There is nothing further upon the subject."

The court in its opinion quotes from numerous cases, and among others from Martin v. Smith, 1 Dill. 85, where the court held:

"The fraud intended by the section, which shall arrest the running of the statute, must be one that is secret and concealed."

In Rosenthal v. Walker, supra, the court distinguished Wood v. Carpenter from Bailey v. Glover, saying:

"Neither case refers to the opinion of the court in Bailey v. Glover, or can be held to overrule or modify it. The case of Bailey v. Glover has been often cited by this court, but has never been doubted or qualified."

Upon the facts found by the court, this action is not barred by the six-year statute.

[2] There is one other question raised by counsel for the defendants which requires consideration. It developed during the testimony that there were two separate corporations, called the Exploration Company, Limited, both organized under the laws of Great Britain, and having their domicile in London. For convenience they will be referred to as the old and the new companies. The old company was organized in 1896, and was the company for whose benefit the lands in controversy were entered, and by whom the money for them was furnished. In March, 1904, that company, having considerable assets which were considered of doubtful value, its officers and shareholders decided to organize two new corporations, one the Exploration Company, Limited, and the other the Exploration Assets Company. All the valuable assets, including the lands in controversy, to which it had the equitable title, the legal title being held in trust for it, as hereinbefore stated, were transferred to the new Exploration Company, while the other assets were transferred to the Exploration Assets Company. The first assets constituted three-fifths, and the other assets two-fifths, of the property belonging to the old company. The shareholders of the old company surrendered their shares to two liquidators, who

were officers of the old company as well as the new company, and received in exchange therefor, for every five shares they held in the old company, three shares in the new Exploration Company and two shares in the Assets Company. The officers elected for the new company were the same as those for the old company. The agent of the old company in the United States continued for a few months, when he died, and thereupon, on September 23, 1904, the defendant Foster was appointed as the agent of the new company for the United States, and the lands in controversy conveyed to him by Mr. Smith, to hold them in trust for the Exploration Company. The old company has no assets whatever, and has had none since the organization of the two new corporations. It is now claimed by one of the counsel for the defendants that it is the old company which entered its appearance in this case, and not the new company, and, as Mr. Foster holds the lands in trust for the new company, no decree can be rendered against that company.

As the Exploration Company had no agent in the state of Colorado upon whom service could be had, and Mr. Foster also resided out of the district of Colorado, they were brought into court under the provisions of section 8 of the Judiciary Act of March 3, 1875, 18 Stat. 472, c. 137 (Comp. St. 1913, § 1039). They entered their appearance, filed their answers, and are making this defense. Nothing was said about the two companies, either in the pleading or in any other way, until this final hearing. In view of the fact that both of these companies had the same name, the same officers, and the lands in controversy are held in trust for one of them, it is wholly immaterial that a new company was formed. If it was intended by the parties to avoid the consequences of their fraud and escape any liabilities incurred by the old company, it was a clumsy effort, which cannot prevail in a court of equity. Linn & Lane Timber Co. v. United States, 236 U. S. 575, 35 Sup. Ct. 440, L. Ed. ——. If such a defense was to be set up, the least that good faith required would have been that the attention of the plaintiff should have been called to the fact by the pleadings.

Upon the whole case the court is of the opinion that the plaintiff is entitled to a decree setting aside the patents to all the lands set out in the complaint, and the defendants be taxed with the costs of this proceeding.