### DIAZ et al. v. PEREZ et al. (two cases).
### Nos. 2530, 2620.

Circuit Court of Appeals, First Circuit.

Dec. 17, 1931.

O. B. Frazer, of New York City, for appellants.

Miguel Guerra Mondragon and Jesus A. Gonzalez, both of San Juan, Porto Rico, for appellees.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Porto Rico. The case appears on the docket of this court under Nos. 2530 and 2620 by reason of an appeal being taken and filed in this court both before and following a petition for rehearing in the Supreme Court of Porto Rico. The facts out of which the issues between

the parties arose may be summarized as follows:

In 1899, Eusebio Perez Castillo and his wife, Monserrate Rivera Rivera, owned a farm called Hornos in Jayuya in the coffee district of Porto Rico. They had eight children, and died in 1899 and 1900, respectively, leaving wills in which each named the eight children as heirs in equal shares. One of the children, Eduardo Perez Rivera, the father of the five plaintiffs, also died in 1899, and the one-eighth undivided interest in the farm to which he was or would have been entitled under the wills of his father and mother was thereupon recorded in the Registry of Property as the property of his minor children, the five plaintiffs-appellees, in equal shares. This action involves the title to this one-eighth interest in a part of the Hornos farm, which had been segregated and had passed through various transfers to Manuel Diaz Mediavilla and his wife, and the cancellation of a mortgage thereon held by the Federal Land Bank, the other defendant-appellant.

At the time of the acquisition by inheritance of plaintiffs' interest in this farm, the Spanish law was in force in Porto Rico, and continued in force until the Revised Civil Code was adopted, which became effective in Porto Rico on July 1, 1902. Until July 1, 1902, jurisdiction over the property of minors was, under the Spanish Civil Code, vested in the institution known as the Family Council. By the Revised Civil Code of Porto Rico, the Family Council was abolished and jurisdiction over a minor's property was transferred to the District Courts of Porto Rico. The tutor or guardian under both systems had direct charge of the minor and of his property.

On March 24, 1902, Felipe Casalduc Colon was the tutor of the five plaintiffs-appellees. The owners of the other seven-eighths of the farm were all of full age and legally competent.

At this time the family was apparently financially embarrassed. Jose Antonio Perez Rivera, one of the plaintiffs' uncles, had already paid from his own resources various debts of the succession, for which the plaintiffs were also responsible for their respective shares. The Hornos farm and another farm known as Santa Barbara, also inherited from the grandparents, were mortgaged to the Banco Espanol de Puerto Rico for $31,537.26. The mortgage was due, and the mortgagee had brought suit to collect and had attached the two farms. Other attachments had been made on one or both of the farms by other creditors of the estate. The estate had no means with which to pay the judgment and discharge the attachments, or to prevent a forced sale of the properties.

The various creditors of the estate, including the mortgagee and attaching creditors offered to accept the sum of $34,600 in payment of their claims and to release the heirs from all further liability, upon condition, however, that a transfer of the two farms, Hornos and Santa Barbara, be made by the remaining heirs to Jose Antonio Perez Rivera, who, in turn, should personally assume all the debts and secure the creditors. Jose Antonio Perez Rivera agreed to this arrangement and, in addition to assuming the mortgages and attachments, was willing, without further consideration, to cancel the debt of the estate due him for the sums which he had already advanced. He proposed to the other heirs that the pending suits and attachments and his own claim against the estate for advances be adjusted by a transfer to him, as suggested by the creditors, of the interest of each of the remaining heirs in the two farms. The six adult heirs owning six-eighths of the two properties were willing to accept this proposition and had agreed to do so; but, in order to make a conveyance of the one-eighth interest belonging to the minors, it was necessary, under paragraph 12 of section 259 of the Spanish Civil Code then in force in Porto Rico, to obtain the consent of the Family Council. A meeting of the Family Council was therefore held in the city of Utuado on March 24, 1902, at which a sufficient number of the members of the Council was present, as well as the tutor and protutor of the minors. While Jose Antonio Perez Rivera was not present, there is no claim that the Council was not properly constituted.

The result of this meeting of the Family Council appears in the following paragraph of the record of the proceedings of the Council:

"Whereas, according to paragraph 12 of section 259 of said (Spanish) Code, the Council is the entity called upon to authorize the tutor to compromise the matters in which the persons subject to guardianship may be interested; that a sufficient number of members of the Family Council has appeared at the meeting held in order to reach an understanding on the subject and that there was a unanimous vote, the petition of the tutor having been presented in writing,

it is hereby declared: That the Family Council of the minors, Rosa, Monserrate-Rafaela, Rafaela-Monserrate, Eduardo and Soledad Perez Casalduc, grants the tutor of said minors, that is to Felipe Casalduc Colon, the necessary authorization to execute the corresponding deeds, in the name of said minors, granting or giving in payment:"

The deed to Jose Antonio Perez Rivera, authorized by this action of the Council, was not executed until October 8, 1902, without any action being taken by the tutor under the Revised Civil Code to secure authority from the District Court of Arecibo.

Following the conveyance to Jose Antonio Perez Rivera in October, 1902, which was duly recorded in the Registry of Property, Jose Antonio Perez Rivera executed a new mortgage of both farms to the Banco Espanol de Puerto Rico to raise the $34,600 necessary to discharge the obligations which he assumed; but, failing to meet his payments under this mortgage, the bank foreclosed, and the property was sold at public sale in 1905 for $27,000. The Hornos farm then passed from the bank by several mesne conveyances, duly recorded in the Registry of Property, of which a segregated part passed to the defendants, who acquired it in August, 1917.

It appears from the testimony that no claim was made by the plaintiffs, or any of them, to any share in this property until 1926, when this action was brought in the District Court of Arecibo, though several, if not all, of the plaintiffs had reached adult age more than ten years previous.

The District Court gave judgment for the plaintiffs on the ground that the Civil Code of Porto Rico, which took effect July 1, 1902, superseded the Spanish Civil Code, and abolished the authority of the Family Council, and therefore, the tutor thereafter was without authority to convey the interest of the plaintiffs in the property without obtaining consent of an Insular District Court; and, as the deed to Jose Antonio Perez Rivera showed that no such consent was obtained, the defendants were not teceros, or third persons, as defined in the Mortgage Law of Porto Rico (Rev. St. & Codes 1913, § 6711); and, further, as the deed of the tutor was invalid on its face and did not convey a just title, the defendants and their predecessors in title could not acquire title by prescription.

From the decision of the District Court of Arecibo the defendants appealed to the Supreme Court of Porto Rico, which in a majority opinion of three to two affirmed the judgment of the District Court, but on different grounds. A majority, apparently relying on the temporary provisions at the end of the Revised Civil Code, § 4984, or the healing act, approved February 24, 1903, hereinafter referred to, agreed that the District Court was in error as to the necessity of the tutor obtaining the consent of the District Court after July 1, 1902, to convey, having obtained authority from the Family Council; but a majority, differently constituted, affirmed the judgment of the District Court on the ground that the adjustment of the claim of the mortgagees and attaching creditors and the conveyance to Jose Antonio Perez Rivera in 1902 under an agreement to discharge all claims against the property was not a compromise, as that term is defined in section 1809 of the Spanish Code then in force, and section 1711 of the Civil Code of Porto Rico (Rev. St. and Codes Porto Rico 1913, § 4817), and therefore a public sale was necessary; and further held, since it appeared in the Registry of Property that the transfer of the minors' interest from the tutor to Jose Antonio Perez Rivera was not the result of a public sale, that Jose Antonio Perez Rivera did not acquire a just or proper title under the conveyance from the tutor, and therefore subsequent purchasers were not third persons and acquired no title, either by deed or prescription as against these plaintiffs.

The minority opinion in dissent held that the transaction between the tutor and Jose Antonio Perez Rivera and the creditors was a compromise, and no public sale was necessary, and in any event the Registry of Property disclosed no obvious defect in the title, and the defendants therefore were teceros, or third persons, under the Mortgage Law.

On a motion for rehearing, the majority still held that the action proposed by the tutor to the Family Council and as carried out, was not a compromise within the meaning of section 1809 of the Spanish Civil Code, or section 1711 of the Revised Civil Code of Porto Rico, and therefore a judicial sale was necessary, presumably relying upon section 272 of the Spanish Civil Code.

During the transition period between the taking over of the island by the United States and the enactment of the Revised Civil Code of Porto Rico under the authority of Congress, it was to be expected that confusion would arise over titles and the validity of transfers. To quiet all titles to real estate acquired between March 1, 1902 and

January 1, 1903, the Porto Rican Legislature enacted the following statute, approved February 24, 1903, now section 405 of the Revised Statutes of Porto Rico (1913 Ed.):

"405. That all deeds of mortgage, conveyances of real estate, wills, declarations of trust, marriages, recognitions of natural or illegitimate children, adoptions of minor children, and in general all acts and contracts which require for their validity the certification by a notary, or that may have required the intervention of the family council or a tutor or protutor, that may have been executed or drawn on and after the first day of March, nineteen hundred and two, or on or prior to the first day of January, nineteen hundred and three, and which according to the laws of Porto Rico in force on the twenty-eighth day of February, nineteen hundred and two, or in force on the first day of January, nineteen hundred and three, would be valid and sufficient and entitled to be registered, copied, and filed in a registry of deeds, or in any office or archive in the Island of Porto Rico, are hereby declared to be valid and sufficient for all lawful purposes thereby intended."

It is quite clear under this act that, if the conveyance to Jose Antonio Perez Rivera was to carry out an agreement of compromise, it was valid under the Spanish Civil Code, or, if it so appeared in the Registry of Property, the majority of the Supreme Court erred in its opinion.

As this is an action between the plaintiffs and the subsequent grantees of Jose Antonio Perez Rivera, the result does not depend on whether the transaction authorized by the Family Council was in law and in fact in the nature of a compromise, but, as between these parties, is determined by what the record in the Registry of Property disclosed.

It is well settled that, under article 34 of the Mortgage Law of Porto Rico (Rev. St. & Codes Porto Rico 1913, § 6718) and its registration provisions, subsequent purchasers are third persons, unless the defect in the title clearly appears in the Registry of Property. Ayllon v. Gonzalez, 28 Porto Rico, 61, 69; Fernandez v. Velazquez, 17 Porto Rico, 716; Menendez v. Cobb, 28 Porto Rico, 725—in which last-cited case the court said: "Article 34 of the Mortgage Law categorically requires that the fatal defects shall clearly appear from the registry itself; therefore the facts which produce such defects must appear clearly and affirmatively in the registry."

The first entry in the Registry of Property of the farm known as Hornos is a registration of a consolidation of several parcels in one and in favor of Eusebio Perez Castillo. The second entry is of a mortgage by Eusebio Perez Castillo to the Banco Espanol de Puerto Rico for the sum of $31,537.26. There also appears in the Registry, "Annotation A," relating to this property, which described an attachment for the sum of $3,922.36 as principal, also "proceeding from a mortgage loan," $500 for interest, and $250 for costs; these sums are twice stated in the dissenting opinion as $6,922.36, as principal, $1,500 as interest, and $250 as costs. Which is correct we are not advised. The third and fourth entries are merely registrations of the property in favor of the children of Eusebio Perez Castillo and Monserrate Rivera Rivera.

The first entry in the registry of the property known as Santa Barbara is also a consolidation of several parcels and a registration in favor of Eusebio Perez Castillo; the fifth entry as to this parcel and the sixth entry as to the farm Hornos is the conveyance under the alleged agreement of compromise by the heirs of Eusebio Perez Castillo and Monserrate Rivera Rivera, including the plaintiffs, by their tutor, Felipe Casalduc Colon, to Jose Antonio Perez Rivera, the Santa Barbara farm being subject to attachments represented by Annotations A, B, C, D, E, F, and G, the total amount of which is not disclosed in the record before this court. However, the entries in the Registry on March 24, 1902, disclosed mortgage indebtedness against these farms, for which the heirs were liable, for more than $36,000, and, while the amount which Jose Antonio Perez Rivera had paid out of his own resources, or the total amount of the existing attachments on the Santa Barbara farm is not shown, the total liability of the succession on March 24, 1902, must have appeared from the Registry of Property to have exceeded the amount agreed upon under the alleged compromise authorized by the Family Council.

The Register's certificate of the conveyance of these farms to Jose Antonio Perez Rivera contains the following language:

"Said minors, Perez Casalduc, represented by their tutor, Felipe Casalduc Colon, of full age, widower, property holder and a resident of the same city of Utuado, by reason of an authorization which to that effect was conceded to him by the Family Council for the said minors, according to the re-

port of the meeting held on the 24th of last March, do declare that they have compromised the differences with the creditors of the ancestor Don Eusebio Perez Castillo, agreeing to convey to them in payment of their credits this property and another piece of property attached by them, with the condition that the *dation en paiement* of the rights which the said creditors have to both properties be made to Don Jose Antonio Perez Rivera, who will be under the obligation of paying the debts with interest and costs, * * *

"The foregoing appears from the Registry and from the deed executed in the ward of Upper Jayuya of the Municipality of Utuado, on the 8th instant, before Notary Felipe Casalduc Goicoechea, of Ponce, wherein is inserted the act relative to the authorization given by the Family Council to which reference has been made above."

Whether the record of the action of the Family Council appears in full in the Registry of Property is not clear on the record before this court, or whether the Register deemed it sufficient under the law to merely refer to it. If so, a purchaser was not obliged to investigate outside the Registry. He is entitled to rely on the record in the Registry. But, if the full record of the action taken by the Family Council did appear in the Registry, it would have disclosed the following, relating to the adjustments proposed by the tutor and the authority granted by the Family Council:

"That said tutor has presented to the family council a petition in writing wherein he requests authorization to *compromise* or settle several judicial matters or questions brought against the Succession of Eusebio Perez Castillo and Monserrate Rivera Rivera, of which Succession his wards form part, their interest being one-eighth of the inheritance of said spouse Perez Rivera, and wherein the tutor expresses the necessity of avoiding expenses and costs, and of preventing that properties and rights which have been attached in various proceedings be sold at public auction, inasmuch as it is well known that in view of the financial crisis existing at present in this Island, public auctions give very unsatisfactory results and after continuous and expensive sales, the only thing obtained is that the properties sold do not cover the whole amount claimed, plus interest and costs, the debtors against whom properties are sold, being thus placed in a worse position; and to that effect the tutor suggests that, with the conformity of

the other seven heirs that constitute the succession, and believing it beneficial to the parties he represents, the actions brought should be compromised, giving in payment the properties attached, to wit: among others the following:" (Describing the two farms, Santa Barbara and Hornos.)

"The Protutor having been heard, he was of the opinion that there is no doubt that it will be absolutely necessary, as was also the opinion of the Council, and in the interest of the minors, not only to enter into the *compromises* proposed, but also to enter into as many *compromises* as possible with other creditors, and consequently he believes that the Tutor should be authorized to execute, without any other steps, the corresponding deeds, and furthermore to do his best to *compromise* the other claims which he knows are pending against the Succession of Perez and Rivera. Consequently, the Council, considering the knowledge it has of the many executions or judicial claims pending against the Succession of which the said minors form part and that due to the anomalous situation now existing in this Island and particularly in this jurisdiction, said matters or questions should be *compromised;* after discussing the point conveniently, voted unanimously what in compliance of the second paragraph of section 304 of the Civil Code is stated by the chairman, at the time of drawing the act, as follows:

"Whereas, according to paragraph 12 of Section 259 of said Code, the Council is the entity called upon *to authorize the tutor to compromise* the matters in which the persons subject to guardianship may be interested; that a sufficient number of members of the Family Council has appeared at the meeting held in order to reach an understanding on the subject and that there was a unanimous vote, the petition of the tutor having been presented in writing, it is hereby declared: That the Family Council of the minors, Rosa, Monserrate-Rafaela, Rafaela-Monserrate, Eduardo and Soledad Perez Casalduc, grants the tutor of said minors, that is to Felipe Casalduc Colon, the necessary authorization to execute the corresponding deeds, in the name of said minors, granting or giving in payment:

"1. To Jose Antonio Perez Rivera,—in order that he pay that part which the said minors should have paid of the $34,600, U. S. Gold, which sum encumbers the properties known as Santa Barbara and Hornos, —the interest which on said properties be-

longs to the said minors, for the same amount that the grantee is bound to pay to the creditors who have attached said properties, to which a value of $30,000 and $4,600, respectively, has been given." (Italics supplied.)

The sums mentioned in the last paragraph are apparently the amounts agreed upon between the heirs and the creditors, which the creditors would accept and discharge the mortgages and attachments on the farms, and not the total amount which the several creditors, including Jose Antonio Perez Rivera, claimed was their due.

It therefore appears from the record of the Family Council and from the Registry that the settlement was considered by all the parties at the time as in the nature of a compromise. What all the facts would have shown as to this transaction we do not know, but the entries in the Registry of Property do not clearly show it was not a compromise, as it was declared in the deed and in the record of the Family Council. The issue here is not what the plaintiffs might have shown before any third parties intervened, but what the Registry disclosed to purchasers.

■ On this point, viz. whether the alleged defect in the deed from the tutor to Jose Antonio Perez Rivera clearly and affirmatively appears in the Registry of Property, it is significant, we think, that the Supreme Court of Porto Rico was divided; that the Register, who is required to be a trained lawyer and presumably versed in the laws of the Island, and whose duty it is under the Mortgage Law (Rev. St. & Codes Porto Rico 1913, § .6685 et seq.) to examine the records and deeds offered for record to determine whether on their face any defect clearly appears and deny record to invalid deeds, discovered no defect in the deed to Jose Antonio Perez Rivera; that lawyers examining the title from time to time for twenty-five years for banks taking it as security for a loan, and for individual purchasers, evidently discovered none. These facts, together with the acceptance of the title by the Banco Espanol de Puerto Rico at the time of the transfer, would seem very conclusively to indicate that the alleged defect that a public sale was necessary did not clearly appear from the Registry; and it is well settled by the authorities above cited that a purchaser is not required to investigate outside the Registry of Property.

It is true, the Family Council could not make it a compromise by so describing it,

and, if it had been attacked before third parties entitled to rely on the Registry had acquired the property, the real facts, whatever they were, would have controlled. Subsequent purchasers, however, had a right to rely on the records in the Registry of Property and the healing statute above referred to.

■ From the record before this court, it is not clear that the Registry of Property disclosed a defect in the title of Jose Antonio Perez Rivera to this property under the deed in which the tutor joined; and therefore these defendants are third parties as to these plaintiffs, and as purchasers in good faith are protected after twenty-five years under article 34 of the Mortgage Law. The security of property rights requires that they should not be disturbed after a quarter of a century, unless the alleged defects are clearly apparent and those seeking to disturb them have acted with diligence in asserting their claim.

In each case numbered 2530 and 2620 on the docket:

The judgment of the Supreme Court of Porto Rico is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion. The appellants recover costs of appeal.