EMMA LIZARDI SILVA ET AL., Plaintiffs and Appellants, v. PABLO RAMÓN CABALLERO ET AL., Defendants and Appellees.

No. 8985. Argued March 6, 1945.—Decided May 28, 1945.

*E. Martínez Avilés* for appellants. *Géigel & Silva* for Monserrate Carrasquillo widow of Buxó, who was summoned to defend against the eviction and appeared in the action.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

On August 24, 1940, the present suit was brought for the annulment of a dominion title proceeding and for revendication by Emma and Humberto Lizardi Silva, the only surviving children of José Lizardi and Justa Silva, together with José Manuel e Irma Lizardi Vallejo, only children of José Lizardi Silva, and by Gladys Méndez Lizardi, sole daughter of José Lizardi Silva. Besides Pablo Ramón Caballero, the Insular Mercantile Co. and Rafael Angel Lizardi Umpierre were joined as defendants, because being interested parties in the action they refused to join as plaintiffs. Upon being summoned, defendant Pablo Ramón Caballero filed a motion to summon in eviction Monserrate Carrasquillo widow of Buxó, which the court granted, and she is the person who has been defending this suit.

The complaint contained three causes of action and prayed for: (a) the nullity of the order rendered by the District Court of San Juan of April 29, 1920, in a dominion-title proceeding of a 25-acre property, and of the record made in the Registry of Property by virtue of said order, as well as the nullity of all subsequent records; (b) the revendication of the property involved in the dominion title proceeding and (c) payment of $3,000 for fruits and profits yielded by the property and not received. It was alleged, in brief, that the property involved in the dominion title proceeding consisted of three different parcels of land which José María Umpierre had consolidated, to wit: a property

of 15 acres awarded to the plaintiffs in the partition of the estate of their mother Justa Silva of Lizardi, 8 acres of another property of 10 acres which were also awarded to them and both of which properties had been sold by their father José Lizardi Jiménez to Umpierre, without obtaining any judicial authorization therefor and without acting in the name and in representation of their children, and lastly, 7½ acres of a 23-acre farm which in said partition was awarded to José Lizardi Jiménez; that the property which the plaintiffs sought to revendicate had an area of 30½ acres, notwithstanding the fact that it was the same property of 25 acres which was the subject matter of the dominion-title proceeding, the apparent difference in area being due to false allegations made by Umpierre in an attempt to confuse the identification of the three parcels of land composing said property; that upon acquiring the two properties awarded to the plaintiffs, Umpierre knew that Lizardi could not sell to him; that the dominion-title proceeding was voidable because all the former owners of the property had not been summoned, because the service on the former owners that were summoned had not been sworn within the term of one year, and because the evidence was not heard within the period of 180 days, all of which was required by § 395 of the Mortgage Law; that all the subsequent acquirers of the property of 30½ acres recorded with an area of 25 acres, must have had knowledge of the cancellation of the registration of title made in favor of Umpierre "because it so appeared from public documents and registries."

Defendant Carrasquillo widow of Buxó appeared by way of demurrer and alleged that the action was barred under § 1857 of the Civil Code. The demurrer was dismissed. She then filed her answer denying the essential facts of the complaint and alleged that the Registry of Property of San Juan did not disclose any defect whatsoever and therefore that all the subsequent acquirers of José María Umpierre

had been *bona fide* third persons and insisted as special defense on the prescription of the actions brought against her.

After the default had been entered against defendants Insular Mercantile Company and Rafael Angel Lizardi, the District Court of San Juan rendered judgment dismissing the complaint on the ground that according to the evidence the action was barred. The plaintiffs moved for a reconsideration on the ground that assuming that the defendant and his predecessors in title had been in possession in good faith and with just title for more than 10 years, this possession was limited only to 21.63 acres according to the record made of the property in the fourteenth inscription of the registry, and that since the area of the property had increased 6.53 acres while in possession of defendant, the latter must have taken part of the 23-acre property inherited by the plaintiffs from their father José Lizardi Jiménez, bounded by the other property of 21.63 acres of which they had no possession, for which reason the revendication sought should be granted as to said parcel of 6.53 acres. The court dismissed the motion and the plaintiffs appealed.

From the evidence introduced in the instant case the following facts appear as having been proved: That Justa Silva Lizardi died on October 16, 1910 under an open will wherein she instituted as her sole heirs her minor children José, Justa, Emma, and Humberto, and her husband José Lizardi Jiménez, in the proportion fixed by law; that in 1913 when the partition of the estate was going to be carried out the District Court of San Juan appointed Marcelino Silva, grandfather of the minors, as their judicial defender, and that Silva appeared in such capacity with Lizardi Jiménez before Notary F. Ramírez de Arellano, and duly executed by public deed the extrajudicial partition of the properties left by the testatrix. In said partition there were awarded to the minors, as undivided common property, two rural properties situated in the ward of Quebrada Arenas, municipality of Río Piedras, one of 15 acres and the other

of 10 acres; that two other properties in the same ward, one of 23 acres and, the other of 10 acres, were awarded to the surviving spouse, in payment of his moiety of the conjugal property; that on June 9, 1915, and before the same Notary F. Ramírez de. Arellano, José Lizardi Jiménez appeared by a deed of sale and alleged that he was the owner of said rural properties of 15 and 10 acres awarded in the partition of the estate to his four minor children and thereby conveyed said parcel to José María Umpierre.

Subsequently, on April 11, 1917, said José Lizardi Jiménez executed a will instituting as his heirs his four children already mentioned and a fifth child, Rafael Angel, born of his marriage with Josefina Umpierre, a daughter of said José María Umpierre. In said will Lizardi Jiménez appointed as his executor his wife Josefina Umpierre, and as tutor of his four children he designated José María Umpierre.

On May 1, 1917, José Lizardi Jiménez died and on September 26 of the same year José María Umpierre instituted a dominion title proceeding in the District Court of San Juan on a rural property of 25 acres situated in the ward Quebrada Arenas in which proceeding he alleged having bought the property from José Lizardi Jiménez. The district court granted the dominion title proceeding on April 29, 1920 finding as justified petitioner's title over the property and ordering registration thereof in his favor which was entered on April 30, 1920, with the curable defect of failure to establish the civil status of the petitioner at the time when he acquired the property.

On May 5, 1920, José María Umpierre sold said property to José Martínez Llonín, who recorded it on May 8 of the same year. This entry was the first of a series of conveyances of the property, all of which were recorded in the registry of property, until on April 13, 1928, its owner, Bernardo Rosa Cuadrado, executed a mortgage thereon in favor

of Monserrate Carrasquillo widow of Buxó. In 1929 Rosa sold the property to Félix A. Thillet, who in turn exchanged it for another one to Miguel Orvañanos. Monserrate Carrasquillo widow of Buxó brought a mortgage foreclosure proceeding against the latter to collect a loan, whereupon a public sale was held in 1933, it being awarded to said widow who recorded it in her favor on January 7, 1928. On August 10 of that same year doña Monserrate sold said property to Pablo Caballero, who recorded it in his name.

. 1. The appellants discussed jointly the first six errors which they alleged were committed by the district court, as follows: in sustaining the plea of prescription, in deciding that the owners of the property had possession with just title and in good faith, in deciding that the former owners of the property were duly summoned in the dominion title proceeding, in deciding that the registry of property did not disclose the nullity of defendant's title, in deciding that the district court acted with jurisdiction in granting the dominion title proceeding, and in dismissing the complaint in its three causes of action.

 As is correctly stated by the appellee in his brief, even though the facts involved in this case seem complicated the fundamental issue to be decided is very simple. It is reduced to a determination of whether or not the defendants are third persons (*terceros*) and whether the cause of nullity of the dominion title proceeding clearly appears from the registry pursuant to § 34 of the Mortgage Law, which in its pertinent part provides:

"Section 34.—Notwithstanding the provisions of the foregoing article,[1] instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently

---

[1] Section 33 provides that:
"Instruments or contracts which are null under the law are not validated by their admission to record."

be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.''

In his Annotation to the Mortgage Law of Puerto Rico, Muñoz Morales comments the meaning of third persons . (*terceros*) to which the above Section refers and on p. 256 states that: ''Third person is one who acquires from the person who, according to the registry, has a right to sell; one who did not take part in the act or contract which was declared void; one who having acquired thus, recorded his title; he is the person described in section 27; and third persons are also the subsequent acquirers, but all of them must ground their right on a recorded title in order to enjoy the benefit or exception of section 34 subject to the condition that the cause of nullity does not clearly appear from the record annulled.''

 That the defendant and their predecessors in title are third persons up to Martínez Llonín who acquired the property in May 8, 1920, is beyond doubt. Now, did the cause for nullity of the dominion-title proceeding clearly appear from its registration? Let us see.

The first inscription of the property based on the dominion title proceeding instituted by Umpierre and the order of April 2, 1920, in its pertinent part reads as follows:

''. . . Don José María Umpierre y Díaz, of full age, proprietor, married to doña Vita Díaz and resident of Río Piedras, represented by Attorney Lorenzo Jiménez García, appeared in the District Court for the Judicial District of San Juan, and sought to establish the title of this property which he acquired by purchase from José Lizardi Jiménez on June 9, 1915; the latter bought it from the spouses Felícita González and José Dolores González y Flores in 1906 who in turn bought it from Manuel Díaz in 1900, who had been in possession of the same for more than 30 years; the petitioner and the former owners being in possession of the property quietly, publicly, peacefully and uninterruptedly. The proceeding having been approved by the Court, those persons who had been ignored and whom the registration might prejudice were summoned by edicts

which were posted in the Court and advertised for the statutory period in 'La Democracia' a newspaper published in this city; *the former owners having been legally summoned,* and the proceeding having been duly prosecuted in open Court; the documentary and oral evidence having been introduced in the Court, a receipt of the taxes paid and the plat of the property; and the proceeding having been heard by the district attorney who intervened therein, judgment was rendered in favor of petitioner. . . .'' (Italics ours.)

A cursory reading of the registration discloses that the question must be answered in the negative. It appears from said registration that the former owners were legally summoned. Appellants argue, however, that it should have been stated that the former owners ''and their ancestors'' had been summoned pursuant to § 395 of the Mortgage Law, but that from the dominion-title proceeding it appeared that only the former owners were summoned. Nevertheless, insofar as the defendants are concerned, they only had to consider the registration, as third persons, in order to determine whether said cause of nullity clearly appeared from said registration. A similar situation arose in *Menéndez* v. *Cobb et al.,* 28 P.R.R. 725, wherein it was alleged that the registration clearly showed that the court had not acquired jurisdiction over the property against whom the order for the foreclosure of the mortgage had been rendered ''because it was not stated therein (the record) that he was duly and lawfully summoned . . .'' several cases being cited by the appellant in support of his contention and this court said, at p. 730:

''As will be seen, these cases have no relevance to the question at issue, that is, whether it clearly appears from the registry that the court which ordered the sale had no jurisdiction over the person of the defendant, because they all refer to cases where the registrar was of the opinion that the jurisdiction of the court was not shown. The present case is different, for the registrar recorded the sale and as the record does not set out any fact showing the lack of jurisdiction of the court, it can not be held that Cobb had knowledge thereof from the registry. *The mere fact that it was not stated in the record that the defendant was duly summoned does not prove*

*that the third person knew that he was not summoned, for he may have been summoned although the record does not show it.* Article 34 of the Mortgage Law categorically requires that the fatal defects shall clearly appear from the registry itself; therefore the facts which produce such defects must appear clearly and affirmatively in the registry." (Italics ours.)

In *Carmona* v. *Cuesta,* 18 P.R.R. 178, it was held that even though a dominion-title proceeding was void because the property was originally sold by the person who was not authorized to do so, cancellation of the registration made thereof did not lie because "the defect of nullity does not clearly appear from the registry and there are innocent third parties . . . who are *bona fide* purchasers and cannot be affected by said nullity . . . "

The allegation contained in the complaint in the case at bar to the effect that the defendants necessarily had to know of the nullity of the registration of the title in favor of Umpierre "because it appeared from public documents and registries" is not the requirement of § 34, *supra,* for we have repeatedly held that the ground of nullity should clearly appear from the registry of property and not from other public documents and registries. We again quote Mr. Justice Texidor in his dissenting opinion in *Pérez* v. *Díaz,* 41 P. R.R. 345, which became a ruling upon the reversal of said case in *Díaz et als.* v. *Pérez,* 54 F.(2d) 588:

"Section 34 above quoted is one of the sections of said law most discussed and commented. It is evident that the circumstance that an act or an apparent contract is recorded, in violation of the law, can not make such an act or contract prevail as valid and perfect. But as the Mortgage Law is a law of security as regards third persons, and as for the recording of acts and contracts there are required certain strict requisites and the examination and qualification of documents by a registrar, who is an attorney and has power to deny the recording of void acts and contracts, value and effect must be given to a record already made, if it does not show on its face any defect avoiding the act or contract. If it does show it, the subsequent purchaser or grantee acquiring rights over the

property so recorded, will have acquired something with knowledge of the existence of a cause of annulment, of which he had notice from the registry itself; whereas if the defect does not appear from the entry, such purchaser is thereby protected.

"* * * * * * *

". . . Section 34 does not simply speak of causes which do not appear from the registry but of 'causes which do not *clearly* appear therefrom.' (italics ours). So an examination by an attorney specialized in Mortgage Law is not contemplated; but only that any person of average education may see whether or not the cause of nullity appears from the registry. The interpretation given by the jurisprudence is in accord with this theory. (Citing cases.)"

Furthermore, in his opinion, Mr. Justice Texidor quotes a paragraph from *Ayllón & Ojeda et al.* v. *González et al.,* 28 P.R.R. 61, where application is made of § 34, *supra,* and another paragraph from the opinion of Mr. Justice Holmes, who, upon reversing the judgment of the Circuit Court, affirmed said case in 266 U. S. 144, and Judge Texidor states that "We have deemed it useful to reproduce here the above excerpt from the opinion, in view of the intimate relationship existing between the doctrine of 'just title' and the provisions of § 34 of the Mortgage Law." The part of the opinion referred to reads as follows:

". . . The question is whether the defendants held their possession under a 'just' or 'proper' title as it is called indifferently, within the meaning of the law that allows a ten-year prescription in that case in place of the thirty years for which a just title is not required. As remarked by the Puerto Rican Court a just title does not mean a perfect title, as otherwise prescription would not be needed. See *United States* v. *Chandler-Dunbar Water Power Co.,* 209 U. S. 447, 450. If the title is good on its face and the possessor under it has no notice of any extrinsic defect, it will found a good title in ten years. The order of sale disclosed no defect, and the Supreme Court held that as it issued from a Court having jurisdiction over the minors and over the tutor, as we have said, the purchasers were not bound to look further. They had no actual notice of the omissions of the tutor, and for the purposes of a

possession in good faith that would satisfy the law. They were entitled to assume that all necessary conditions had been fulfilled. We need not consider the further intimation of the Court, also to be respected, that the failure to register and to give bond did not make the sale void.''

We are of the opinion that the lower court did not err in deciding that plaintiffs' action was barred under §§ 1850, 1852, and 1857 of the Civil Code because ''since May 5, 1920, on which date José Martínez Llonín bought from the person who according to the Registry was the owner of the property, until August 24, 1940, at the time of the filing of this complaint, more than 10 years have elapsed, and that defendant Pablo Ramón Caballero and the previous owners of the property have been in possession thereof publicly for more than 10 years in good faith and with just title . . . ,'' and therefore that it did not commit the other errors assigned inasmuch as the defendants as well as the former owners up to Llonín were third persons as contemplated by § 34 of the Mortgage Law.

The lower court did not commit the seventh error in having denied the motion for reconsideration because, as aptly stated by the appellee, ''by virtue of said motion the plaintiff sought to raise a question which was not involved in the original action. The complaint . . . did not refer to a parcel of land of seven and a half acres which may have been the excess area recorded in the registry of property, but on the contrary. it referred exclusively to the whole property of twenty five acres of which the plaintiffs alleged to be the owners.''

The judgment appealed shall be affirmed.

Mr. Justice De Jesús did not participate herein.