EMMA y HUMBERTO LIZARDI SILVA, ETC., demandantes y apelantes, *v.* PABLO RAMÓN CABALLERO, INSULAR MERCANTILE Co. y RAFAEL ANGEL LIZARDI UMPIERRE, demandados y apelados.

Núm. 8985.—*Sometido:* Marzo 6, 1945. *Resuelto:* Mayo 28, 1945.

*E. Martínez Avilés,* abogado de los apelantes; *Géigel & Silva,* abogados de Monserrate Carrasquillo Vda. de Buxó, quien fué citada en evicción y compareció en el pleito.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El 24 de agosto de 1940 se inició el presente litigio sobre nulidad de expediente de dominio y reivindicación por parte de Emma y Humberto Lizardi Silva, únicos hijos sobrevivientes de José Lizardi y Justa Silva, acompañados por José Manuel e Irma Lizardi Vallejo, únicos hijos de José Lizardi Silva, y por Gladys Méndez Lizardi, única hija de Justa Lizardi Silva. Además de Pablo Ramón Caballero, figuran como demandados la Insular Mercantile Co. y Rafael Angel Lizardi Umpierre porque siendo partes interesadas en la acción se negaron a concurrir como demandantes. Al citarse al demandado Pablo Ramón Caballero radicó mo-

ción para que se citara en evicción a Monserrate Carras-quillo viuda de Buxó, a lo que accedió la corte, y es ella la persona que ha venido defendiéndose en este pleito.

Por las tres causas de acción de la demanda se solicita: (*a*) la nulidad de la resolución dictada por la Corte de Distrito de San Juan en 29 de abril de 1920 en una información de dominio sobre una finca de 25 cuerdas, y de la inscripción hecha en el Registro de la Propiedad a virtud de dicha resolución, así como la nulidad de todas las subsiguientes inscripciones; (*b*) la reivindicación de la finca objeto del procedimiento de información de dominio y (*c*) el pago de una suma de $3,000 por concepto de frutos y productos de la finca dejados de percibir. Se alegó, en síntesis, que la finca objeto de la información de dominio se componía de tres parcelas diferentes que José María Umpierre había hecho agrupar, a saber: la finca de 15 cuerdas adjudicada a los demandantes en la partición de la herencia de su madre Justa Silva de Lizardi, 8 cuerdas de otra finca de 10 cuerdas que también les fueron adjudicadas a ellos, y las cuales dos fincas habían sido vendidas por su padre José Lizardi Jiménez a Umpierre, sin que mediare autorización judicial y sin que actuare en nombre y representación de sus hijos, y, por último, 7½ cuerdas de la finca de 23 cuerdas que en dicha partición fué adjudicada a José Lizardi Jiménez; que tal finca, la cual se proponían reivindicar los demandantes, tenía una cabida de 30½ cuerdas, ello no obstante siendo la misma finca de 25 cuerdas que fué objeto del expediente de dominio, debiéndose la diferencia aparente en la cabida a alegaciones falsas hechas por Umpierre en su solicitud para eludir la identificación de los tres predios de terreno que la componían; que al adquirir las dos fincas adjudicadas a los demandantes Umpierre sabía que Lizardi no podía venderle; que el expediente de información de dominio estaba viciado de nulidad por no haberse citado todos los anteriores dueños de la finca, por no haberse jurado

dentro del término de un año el diligenciamiento de la citación de aquellos anteriores dueños que fueron citados, y por no haberse oído la prueba en el término de 180 días, todo ello con arreglo al artículo 395 de la Ley Hipotecaria; que todos los subsiguientes adquirentes de la finca de 30½ cuerdas, inscrita con una cabida de 25, tenían necesariamente conocimiento de la nulidad de la inscripción del dominio a favor de Umpierre "por constar en documentos y registros públicos."

Compareció la demandada Carrasquillo Vda. de Buxó mediante excepción previa alegando que la acción había prescrito de acuerdo con el artículo 1857 del Código Civil, la cual fué declarada sin lugar. Radicó entonces su contestación negando los hechos esenciales de la demanda, y alegando que del Registro de la Propiedad de San Juan no resultaba defecto de clase alguna y que por consiguiente todos los posteriores adquirentes de José María Umpierre habían sido terceros de buena fe, y repitió como defensa especial la prescripción de las acciones incoadas en su contra.

Después de anotarse la rebeldía de los demandados Insular Mercantile Company y Rafael Angel Lizardi, la Corte de Distrito de San Juan dictó sentencia declarando sin lugar la demanda por resultar de la prueba que la acción había prescrito. Los demandantes solicitaron la reconsideración alegando que, aun aceptando que el demandado y sus predecesores en título hubieran poseído con buena fe y justo título por más de diez años, esta posesión se limitaba únicamente a 21.63 cuerdas, según aparece la cabida de la finca de la inscripción décimocuarta en el Registro, y que habiendo aumentado en 6.53 cuerdas la cabida de la finca en posesión del demandado, forzosamente tuvo que introducirse éste en la finca de 23 cuerdas heredada por los demandantes de su padre, José Lizardi Jiménez, colindante con la otra finca de 21.63 cuerdas, y de la cual ellos no estaban en posesión, por lo cual debería decretarse la reivindicación en cuanto a dicha

parcela de 6.53 cuerdas. La corte declaró sin lugar la moción y los demandantes apelaron.

De la prueba presentada en este caso aparecen probados los siguientes hechos: que Justa Silva de Lizardi falleció el 16 de octubre de 1910 bajo testamento abierto en el que instituyó como únicos herederos a sus hijos menores de edad José, Justa, Emma y Humberto, y a su cónyuge José Lizardi Jiménez, en la proporción señalada por ley; que al procederse en 1913 a las operaciones de partición del caudal hereditario, la Corte de Distrito de San Juan nombró a Marcelino Silva, abuelo de los menores como su defensor judicial, y en tal carácter compareció Silva con Lizardi Jiménez ante el notario F. Ramírez de Arellano, formalizándose mediante la correspondiente escritura pública la partición extrajudicial de los bienes relictos de la testadora. Por dicha partición se adjudicaron a los menores, en común proindiviso, dos fincas rústicas situadas en el barrio de Quebrada Arenas, municipio de Río Piedras, una de 15 cuerdas y otra de 10 cuerdas; y al cónyuge viudo se adjudicaron otras dos fincas, en el mismo barrio, de 23 cuerdas una y de 10 cuerdas la otra, en pago de su mitad de gananciales; que en 9 de junio de 1915, y ante el mismo notario F. Ramírez de Arellano, compareció José Lizardi Jiménez en escritura de compraventa manifestando ser dueño de las fincas rústicas de 15 y 10 cuerdas adjudicadas en la partición a sus cuatro hijos menores de edad y traspasando dichos predios en venta a José María Umpierre.

Posteriormente, en 11 de abril de 1917 el mismo José Lizardi Jiménez otorgó testamento instituyendo herederos a sus cuatro hijos ya mencionados y a un quinto hijo, Rafael Angel, procreado en segundas nupcias con Josefina Umpierre, hija del referido José María Umpierre. En ese testamento Lizardi Jiménez nombró albacea a su cónyuge Josefina Umpierre, y para el cargo de tutor de sus cuatro hijos designó al mismo José María Umpierre.

El primero de mayo de 1917 falleció José Lizardi Jiménez, y el 26 de septiembre de ese mismo año José María Umpierre acudió ante la Corte de Distrito de San Juan promoviendo expediente de dominio sobre una finca rústica de 25 cuerdas situada en el barrio de Quebrada Arenas, en cuyo expediente alegó haber comprado la finca a José Lizardi Jiménez. La corte de distrito aprobó la información practicada en el expediente en 29 de abril de 1920, declarando justificado el pleno dominio de la finca en el promovente y ordenando la inscripción a su favor en el Registro, operación que se practicó el 30 de abril de 1920, consignándose sin embargo el defecto subsanable de no expresarse en el expediente el estado civil del promovente en la fecha en que adquirió la finca.

El 5 de mayo de 1920 José María Umpierre vendió la finca mencionada a José Martínez Llonín, quien la inscribió a su nombre en 8 de mayo del mismo año. Con esta inscripción comenzó una serie de traspasos de la finca, todos ellos inscritos en el Registro de la Propiedad, hasta que en 13 de abril de 1928 su dueño, Bernardo Rosa Cuadrado, constituyó sobre ella hipoteca a favor de Monserrate Carrasquillo Vda. de Buxó. En 1929 Rosa vendió la finca a Félix A. Thillet, quien a su vez la permutó por otra a Miguel Orvañanos. Contra este último siguió Monserrate Carrasquillo Vda. de Buxó ejecutivo hipotecario en cobro de su préstamo, ordenándose la venta de la finca en pública subasta en 1933, en la cual se le adjudicó a ella, habiéndose inscrito a su favor en 7 de enero de 1938. En 10 de agosto de ese mismo año doña Monserrate vendió la finca a Pablo Caballero, quien la inscribió a su favor.

1. Los apelantes discuten conjuntamente los primeros seis errores cuya comisión imputan a la corte de distrito, a saber, al declarar con lugar la defensa de prescripción, al resolver que los dueños de la finca han poseído con justo título y buena fe, al resolver que los anteriores dueños de

la finca fueron debidamente citados en la información de dominio, al resolver que no se desprendía del Registro de la Propiedad la nulidad del título del demandado, al resolver que la corte de distrito actuó con jurisdicción al aprobar la información de dominio, y al declarar sin lugar la demanda en sus tres causas de acción.

Como bien dice la apelada en su alegato aun cuando los hechos envueltos en este caso aparecen complicados la cuestión fundamental a resolver es bien sencilla. Se reduce ella a la determinación de si los demandados son o no terceros y si la causa de nulidad del expediente de dominio aparece claramente del Registro de acuerdo con el artículo 34 de la Ley Hipotecaria, que en lo pertinente dispone:

"Artículo 34:—No obstante lo declarado en el artículo anterior, (1) los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro."

Comentando Muñoz Morales en sus Anotaciones a la Ley Hipotecaria de Puerto Rico el concepto de tercero a que se refiere este artículo dice a la página 256 que "es aquél que adquiere de la persona que según el Registro aparezca con derecho para ello; es el que no tomó parte en el acto o contrato que se declaró nulo; es el que habiendo adquirido así inscribió luego su derecho; es el definido en el artículo 27; y son también terceros los sucesivos adquirentes, pero todos han de fundar su derecho en un título inscrito para poder disfrutar del beneficio o excepción del art. 34 bajo el supuesto o condición de que la causa de nulidad no conste claramente en la inscripción anulada."

Que los demandados y sus antecesores en título hasta llegar a Martínez Llonín que adquirió la finca en 8 de

_____

(1) El artículo 33 dispone que:

"La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes."

mayo de 1920 son terceros en este caso, no tenemos duda. Ahora bien, ¿aparecía la causa de nulidad del expediente de dominio claramente de su inscripción en el Registro? Veámoslo.

La primera inscripción de la finca, basada en el expediente de dominio promovido por Umpierre y en la resolución de 29 de abril de 1920 dice así en lo pertinente:

". . . Don José María Umpierre y Díaz, mayor de edad, propietario, casado con doña Vita Díaz y vecino de Río Piedras, representado por el abogado Lorenzo Jiménez García, acudió a la Corte de Distrito del Distrito Judicial de San Juan, Sección primera, solicitando acreditar el dominio de esta finca que adquirió por compra a José Lizardi Jiménez el nueve de Junio de mil novecientos quince; éste la compró a los esposos Felícita González y José Dolores González y Flores en mil novecientos seis, quienes a su vez la compraron a Manuel Díaz el año mil novecientos, quien poseyó por más de treinta años; siendo la posesión del promovente y anteriores dueños quieta, pública, pacífica y sin interrupción alguna. Admitida la información ante la Corte, fueron convocadas las personas ignoradas a quienes pudiera perjudicar la inscripción, por medio de edictos que se fijaron en el estrado de la Corte y se publicaron por término legal en el periódico 'La Democracia,' que se edita en esta ciudad; *habiéndose citado en forma legal a los anteriores dueños,* practicándose en Corte abierta la información correspondiente; habiéndose presentado a la Corte prueba documental y testifical, recibo de contribuciones pagadas y el plano correspondiente de la finca; y habiéndose dado vista del expediente al Fiscal, quien intervino en el procedimiento, emitió dictamen favorable a la petición. . . . ." (Bastardillas nuestras.)

Una mera lectura de esta inscripción demuestra que la pregunta debe ser contestada en la negativa. De dicha inscripción aparece que se había citado en forma legal a los anteriores dueños. Arguyen los apelantes, sin embargo, que debió haberse hecho constar que se había citado a los anteriores dueños "y a sus causahabientes" de acuerdo con el artículo 395 de la Ley Hipotecaria y que del expediente de dominio aparece que sólo se citó a los anteriores dueños. Empero, en cuanto a los demandados, como terceros, ellos

sólo tenían que atenerse a la inscripción en el Registro de la Propiedad para determinar si dicho motivo de nulidad aparecía claramente de dicha inscripción. Una situación similar surgió en el caso de *Menéndez* v. *Cobb et al.*, 28 D.P.R. 775 en el que se alegó que de la inscripción resultaba claramente que la corte no había adquirido jurisdicción sobre la persona contra quien se dictó una orden de ejecución de hipoteca "porque no se hizo constar en ella (la inscripción) que fué debidamente citado y emplazado en forma legal..." citándose varios casos por el apelante para sostener su contención y esta Corte dijo, a la pág. 780:

"Como se ve, estos casos no guardan relación con el punto a decidir que es el de si del registro resulta claramente que la corte que decretó la venta no tuvo jurisdicción sobre la persona del demandado pues todos ellos se refieren a casos en que los registradores han entendido que no se les justificaba la jurisdicción de la corte. El presente caso es distinto pues el registrador hizo la inscripción de la venta y como de ella no aparece hecho alguno que demuestre la falta de jurisdicción de la corte no es posible que declaremos que Cobb sabía tal cosa por el registro. *Por el solo hecho de que en la inscripción no se diga que el demandado fué citado en debida forma no puede sostenerse que el tercero supo que no fué citado pues pudo haberlo sido aunque no lo diga la inscripción.* El artículo 34 de la Ley Hipotecaria exige de modo categórico que las causas de nulidad resulten claramente del mismo registro y por tanto los hechos de los cuales resulten deben aparecer en él afirmativa y claramente." (Bastardillas nuestras.)

Y en *Carmona* v. *Cuesta*, 18 D.P.R. 180, se resolvió que a pesar de ser nulo un expediente de dominio por haber sido vendida originalmente la finca por quien no tenía autorización ni representación para ello, era improcedente la cancelación de la inscripción que del mismo se hizo porque "los vicios de nulidad no aparecían claramente del Registro y hay terceros.... adquirentes de buena fe que no pueden ser perjudicados por aquella nulidad..."

La alegación contenida en la demanda en el caso de autos al efecto de que los demandados tenían necesariamente

conocimiento de la nulidad de la inscripción del dominio a favor de Umpierre "por constar en documentos y registros públicos" no es lo que exige el artículo 34, supra, pues consistentemente hemos resuelto que el motivo de nulidad debe resultar claramente del Registro de la Propiedad y no de otros documentos o registros públicos. De nuevo repetimos aquí lo dicho por el Juez Asociado Sr. Texidor en su opinión disidente en el caso de *Pérez Casalduc* v. *Díaz Mediavilla*, 41 D.P.R. 973, la cual prevaleció al ser revocado dicho caso en *Díaz et als.* v. *Pérez*, 54 F.2d 588:

"El artículo 34 que citamos es uno de los más discutidos y comentados de la ley. Era evidente que la circunstancia de hallarse inscrito un acto, o un contrato aparente, realizados en violación de la ley, no podría hacerlos prevalecer como buenos y perfectos. **Pero,** como la Ley Hipotecaria es de garantía con respecto a terceros, y como para la inscripción de actos y contratos, se exigen requisitos estrictos y la intervención y calificación de documentos por un registrador abogado, que tiene la facultad de negar la inscripción a los actos y contratos nulos, tenía que darse valor y eficacia a la inscripción ya hecha, si de ella no resultara un vicio que hiciera nulo el acto o contrato. Si resultara, el futuro comprador, y el adquirente de derechos sobre la finca así inscrita, adquiriría a sabiendas de la existencia de una causa de nulidad, de la que estaba avisado por el mismo registro de la propiedad; y si la causa no resultara de la inscripción, el adquirente se hallaría protegido por ese hecho.

"           *           *           *           *           *           *           *

". . . Por esto, el artículo 34 no habla simplemente de causas que no resulten del mismo registro, sino de 'causas que no resulten *claramente* del mismo registro' (itálicas nuestras). Porque no se trata de requerir el estudio de un abogado experto en Ley Hipotecaria, sino de que cualquiera persona de mediana instrucción pueda ver si resulta, o no, del registro, la causa de nulidad. La interpretación hecha por la jurisprudencia está de acuerdo con esta teoría. (Citas)"

Más adelante el Juez Texidor cita un párrafo de la opinión en el caso de *Ayllón y Ojeda et al.* v. *González y Fernández et al.*, 28 D.P.R. 67 aplicando el artículo 34 supra, y otro párrafo de la opinión del Juez Asociado Sr. Holmes cuando al revocarse la sentencia de la Corte de Circuito

dicho caso fué confirmado en 266 U.S. 144 diciendo el Juez Texidor que ''Conviene anotar aquí esta parte de la opinión, por la íntima relación entre la doctrina de 'justo título' y el contenido del artículo 34 de la Ley Hipotecaria.'' La parte de la opinión referida dice así:

''. . . La cuestión a dirimir es si los demandados poseían con título 'justo' o 'propio,' según se le designa indistintamente, dentro del significado de la ley que determina la prescripción de diez años en tal caso, en vez de los treinta años para los cuales no se precisa justo título. Según observó la corte de Puerto Rico, un justo título no significa un título perfecto, pues de otro modo no sería menester la prescripción. Véase *United States* v. *Chandler-Dunbar Water Power Co.*, 209 U. S. 447, 450. Si el título es bueno por su propia faz, y el poseedor a virtud del mismo no tiene conocimiento de ningún defecto extrínseco, fundará un buen título en diez años. La orden de venta no revelaba defecto alguno, y la Corte Suprema resolvió que, toda vez que fué librada por una corte con jurisdicción sobre los menores y el tutor, según hemos indicado, los compradores no estaban obligados a investigar más. No tenían conocimiento real de las omisiones del tutor, y, para los fines de una posesión de buena fe, eso satisface a la ley. Ellos tenían derecho a asumir que todos los requisitos necesarios habían sido cumplidos. No necesitamos considerar la observación adicional de la corte, también digna de respetarse, de que la omisión de inscribir en el registro de tutelas y de prestar fianza no anulaba la venta.''

Somos de opinión que la corte inferior no erró al resolver que la acción de los demandantes estaba prescrita de acuerdo con los artículos 1850, 1852, y 1857 del Código Civil porque ''Desde mayo 5 de 1920, fecha en que José Martínez Llonín compró de la persona que según el Registro aparecía ser dueña de la finca, hasta agosto 24 de 1940, fecha de la radicación de la demanda, han transcurrido más de diez años, y habiendo el demandado Pablo Ramón Caballero, y los anteriores dueños de la finca, poseído la misma durante más de diez años entre presentes con buena fe y justo título . . .,'' y en su consecuencia que tampoco cometió los demás errores señalados por tener tanto los demandados

como los anteriores dueños hasta Llonín el carácter de terceros que contempla el artículo 34 de la Ley Hipotecaria.

Tampoco cometió el séptimo por el hecho de haber declarado sin lugar la moción de reconsideración de sentencia porque, como con razón dice la apelada "por medio de dicha moción la parte demandante intentó plantear una cuestión que no había estado envuelta en el pleito original. La demanda . . . . no se refería a una parcela de terreno de siete cuerdas y media que resultase ser el exceso sobre la cabida informada en el Registro de la Propiedad y, por el contrario, se refirió exclusivamente a la totalidad de la finca de veinticinco cuerdas de la cual alegaron los demandantes ser dueños."

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. De Jesús no intervino.